## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICTOF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID GILLESPIE, | § | |
| Individually and on Behalf of all Others | § | |
| Similarly Situated, | § | CIVIL ACTION NO. 4:18-cv-01405 |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | |
| | § | |
| STATOIL TEXAS ONSHORE | § | |
| PROPERTIES, LLC, | § | |
| STATOIL PIPELINES, LLC, | § | JURY TRIAL DEMANDED |
| STATOIL USA ONSHORE | § | |
| PROPERTIES, INC., and | § | |
| STATOIL GULF SERVICES, LLC | § | |
| | § | |
| *Defendants.* | § | |

## NOTICE OF DIRECTLY RELATED CASE

COMES NOW David Gillespie, Plaintiff in the above action and pursuant to 28 U.S.C.

Rule 40.2 and Southern District Court Local Rule LR5.2, and files this *Notice of Directly Related*

*Case* and would show this Honorable Court the following:

The following case is directly related to the instant case:

RAYANNE REGMUND, GLORIA JANSSEN, MICHAEL NEWBERRY and CAROL
NEWBERRY v. TALISMAN ENERGY USA, INC., CIVIL ACTION NO. 4:16-cv-02960

These civil-action, class-action complaints arise out of the same transaction or occurrences

and involve defendants who were joint venture partners and are alleged to have improperly paid

oil and gas royalties on the same wells.  *See Plaintiff's Original Class Action Complaint*, Civil

Action No. 4:18-cv-01405, attached as *Exhibit 1*, and *First Amended Complaint – Class Action*,

Civil Action No. 4:16-cv-02960, attached as *Exhibit 2*.  The *Talisman* Defendant in the previously-

filed complaint was a "joint venture" partner with the *StatOil* Defendants in the complaint in this Honorable Court. Both complaints necessarily involve the same parties and are based on the same or similar claims.  The cases involve the same property and the same conduct giving rise to the litigation. Assignment to a single judge and action is likely to conserve judicial resources and promote an efficient determination of the actions.

Respectfully submitted,

**THE FERGUSON LAW FIRM, LLP**
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 phone
(409) 832-9708 fax

By: s/ Paul "Chip" Ferguson, Jr.
Paul F. Ferguson, Jr.
cferguson@thefergusonlawfirm.com
Texas Bar No. 06919200
Jane S. Leger
jleger@thefergusonlawfirm.com
Texas Bar No. 00788814
Mark C. Sparks
mark@thefergusonlawfirm.com
Texas Bar No. 24000273

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| **DAVID GILLESPIE,** | § | |
| **Individually and on Behalf of all Others** | § | |
| **Similarly Situated,** | § | **CIVIL ACTION NO.**  4:18-cv-01405 |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | |
| | § | |
| **STATOIL TEXAS ONSHORE** | § | |
| **PROPERTIES, LLC,** | § | |
| **STATOIL PIPELINES, LLC,** | § | **JURY TRIAL DEMANDED** |
| **STATOIL USA ONSHORE** | § | |
| **PROPERTIES, INC., and** | § | |
| **STATOIL GULF SERVICES, LLC** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

David Gillespie, (hereinafter also "Plaintiff") by and through his undersigned counsel, on behalf of himself and all others similarly situated, allege facts and claims upon his personal knowledge as to matters relating to himself, and upon information and belief as to all other matters based upon the investigation of counsel, as follows:

## I. INTRODUCTION

1.     This action is brought to remedy the systemic breach of contract by StatOil Texas Onshore Properties, LLC, StatOil Pipelines, LLC, Statoil USA Onshore Properties, Inc., and StatOil Gulf Services, LLC (hereinafter collectively "StatOil" and/or Defendants) in connection with StatOil's use of an improper methodology to calculate and pay Plaintiff and Class Members contractually owed oil and gas royalties.  In 2010, Talisman Energy USA, Inc. ("Talisman") and StatOil Texas Onshore Properties, LLC entered a joint development agreement to own and



PLAINTIFF'S
EXHIBIT
**1**
4:18-cv-01405

produce oil and gas from multiple wells and leases across the Eagle Ford, Texas area.  Under the joint development agreement, StatOil and Talisman divided the oil and gas production on a roughly 50-50 basis.  StatOil and Talisman sold their own shares of production and each paid royalty owners for their share of the production sold.

2.      Starting in 2009, the Eagle Ford saw a remarkable rise in new rigs and new production.[1] Effective August of 2013, StatOil assumed the position of authorized operator for wells in the eastern area of operations which covered principally Karnes, DeWitt and Bee counties.  Effective April 2016, StatOil assumed the position of authorized operator for all joint wells in all Eagle Ford areas.

3.      StatOil lacked adequate "condensate" production data and/or other data, and therefore improperly calculated payments due Plaintiff and others similarly situated.  Much of the Eagle Ford shale production is light and unstable "condensate," which must be stabilized before the product is marketable.  "Condensate" refers to a lighter grade of crude oil, often produce in conjunction with wells that produce large amounts of natural gas.  Stabilization requires treatment, usually in the form of heating and pressurization, to remove the volatile and lighter elements— principally methane and other natural gas liquids.  These lighter elements, known as "flash gas," can be collected and reintroduced back into the natural gas stream for subsequent processing and sale.  Many times, removal of "flash gas" results in 30% or more of the initial condensate volume measured at the well separator to shrink into the final stabilized volume suitable for sale.  StatOil and its joint venture, Talisman, constructed over a dozen different batteries or central facilities sometimes referred to as Central Delivery Points ("CDP's) or Central Receipt Points ("CRP's") to perform this necessary processing.

---

[1] *See* https://www.eia.gov/petroleum/drilling/pdf/eagleford.pdf

4.      Initial processing occurs at the separator near the well where the raw stream is split into water, oil, condensate, and gas.  The oil/condensate and gas are measured at a meter installed at the tail-end of the separator.  Additional processing occurs between this point of measurement and measurement at the point of sale.  Between that processing and natural evaporation of condensate/oil, there is typically a reduced volume measured at the sales meter, with the difference referred to as "shrinkage."  Because the final measurement point is at the sales meter, the accounting function must proportionally allocate production back to the wells for the purpose of properly calculating royalty.  In many cases, 20%, 30%, or more of the initial condensate volume is shrunk as a result of treatment.

5.      StatOil's lack of a proper methodology (due to a lack of condensate production data) resulted in both it and Talisman improperly calculating payments due royalty owners including, inter alia, Plaintiff David Gillespie.

## II. PARTIES

6.      Plaintiff David Gillespie is a citizen of Texas and resident of Bexar County, Texas.  Mr. Gillespie owns lease interests entitling him to royalty payments on the actual oil and gas produced from wells operated by StatOil and/or Talisman.  Plaintiff Gillespie entered into an oil and gas lease agreement with StatOil and/or Talisman for the development, production, and sale of oil and gas in Texas.  Since that time, Plaintiff Gillespie has been underpaid royalties as a result of the improper payment methodology employed by StatOil.

7.      StatOil Texas Onshore Properties, LLC ("StatOil Texas"), upon information and belief, is and has been at all times material and relevant herein, a for-profit corporation organized and existing under the laws of the State of Delaware with its principle place of business in Houston, Texas.  Defendant StatOil USA may be served with process through its registered agent, Capitol

Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.  Plaintiff has requested a waiver of summons from this Defendant.

8.      StatOil Pipelines, LLC ("StatOil Pipelines"), upon information and belief, is and has been at all times material and relevant herein, a for-profit corporation organized and existing under the laws of the State of Delaware with its principle place of business in Houston, Texas.  Defendant StatOil USA may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.  Plaintiff has requested a waiver of summons from this Defendant.

9.      StatOil USA Onshore Properties, Inc. ("StatOil USA"), upon information and belief, is and has been at all times material and relevant herein, a for-profit corporation organized and existing under the laws of the State of Delaware with its principle place of business in Houston, Texas.  Defendant StatOil USA may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.  Plaintiff has requested a waiver of summons from this Defendant.

10.     StatOil Gulf Services, LLC ("StatOil Gulf"), upon information and belief, is and has been at all times material and relevant herein, a foreign limited liability corporation conducting business in the State of Texas.  Defendant StatOil Gulf may be served with process through its registered agent, Corporation Service Company, as reflected in the Texas Secretary of State records, at 211 E. 7th Street, Suite 620 Austin, Texas 78701-3218. Plaintiff has requested a waiver of summons from this Defendant.

### III. JURISDICTION

11.     This Court has jurisdiction over Plaintiff's claims pursuant to Title 28 U.S.C.  §1332(d).  Diversity jurisdiction exists and Plaintiff resides in Texas.  The Class consists of citizens and

residents having oil and gas rights for property including leases involving StatOil. The amount in controversy exceeds $5,000,000.00 for Representative Plaintiffs and members of the Class collectively, exclusive of interests and costs, by virtue of the amount of royalties StatOil failed to pay pursuant to its contractual obligations, and by virtue of the declaratory relief sought.

## IV. VENUE

12.     Venue is proper in the Southern District of Texas, Houston Division, where Plaintiff's wells at issue are located and Plaintiff Gillespie, along with certain of Class Members, reside. Venue is proper in this district pursuant to Title 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this federal district.

## V. FACTS

13.     Plaintiff and Class Members own royalty rights and interests arising from oil and gas leases in the South Texas Eagle Ford shale play ("Eagle Ford"). These royalty interest owners include individuals, partnerships, trusts, corporations and other entities residing both in Texas, and throughout the United States that own leases in the Eagle Ford. Statoil was established as a wholly-state owned oil company in 1972. Reform in 1985 made it possible to consider the ownership structure of StatOil and apply for public listing. This reform marked the start of a process leading up to the public listing of StatOil in 2001. Norsk Hydro ASA ("Hydro") was founded in 1905 as a private company. Hydro-electric development at the beginning of the 20th century laid the basis for industrial growth in Norway and for Hydro's business concept, which was the production of nitrogen fertilizer. Hydro entered the oil and gas industry in 1963, and in October of 2007, merged with StatOil. Today, StatOil is a Norwegian-based energy company with operations in more than thirty (30) countries.

14.     Talisman is an upstream oil and gas production company and an indirect subsidiary of Calgary, Alberta-based Talisman Energy Inc., ("TEI") which was acquired for approximately $13 billion by an affiliate of the Spanish integrated energy company Repsol S.A. on May 8, 2015.  In 2010, Talisman and StatOil entered a joint development agreement to own and produce oil and gas from multiple wells and leases across the Eagle Ford, Texas area.  Under the joint development agreement, StatOil and Talisman divided the oil and gas production on a roughly 50-50 basis. StatOil actually identifies the Eagle Ford play on its website.  StatOil and Talisman sold their own shares of production and each paid royalty owners for their share of the production sold.  By entering into a joint venture, StatOil became jointly and severally liable for payments made to royalty owners.

15.     In Texas, gas and oil leases permit royalty payments to be calculated based on the amount of gas or oil as determined either at the wellhead or the amount that enters the pipeline for sale and may be based on production of oil and gas, or sales of the produced oil and gas.

16.     The production of oil, condensate and natural gas at a well site is measured daily at the wellhead by a meter.

17.     Pursuant to Texas oil and gas law, the operating entity is responsible for reporting all required well production data to Texas Comptroller of Public Accounts (hereinafter "Texas Comptroller").  Title 16, TEX. NAT. RES. CODE.  Reports to the Texas Comptroller include both volumes sold and revenues received, by product reported.

18.     Texas law also requires that any entity paying oil and gas royalties must accompany the payment with a check stub from the payor containing details, inter alia, of well identification, volume of production, price, decimal interest (the royalty owner's share of production from the drilling unit), expense deductions and taxes. TEX. NAT. RES. CODE §§91.501-91.502. The required

check stub detail is intended to allow the royalty recipient to verify that the payment accords with the payor's obligation under applicable leases.

19.     In 2010, Talisman entered the Texas oil and gas market and opened a Texas office whereby it acquired extraction rights under numerous oil and gas leases in the Eagle Ford shale including those owned by Plaintiff and the Class Members. Talisman also entered into the South Texas Joint Development Agreement (the "Development Agreement"), which created a joint venture between Talisman and Statoil to explore, develop and produce oil and gas.  Statoil also owns extraction rights under numerous oil and gas leases in the Eagle Ford.

20.     The Development Agreement obligated the well operator, including StatOil, to report all well production data to the non-operating partner in a manner consistent with and as required by the Texas Comptroller, so that both the operator and non-operating partner could comply with Texas law governing royalty payments, expenses, adjustments and deductions thereto and documentation including check stubs to mineral rights owners.

21.     Under the Development Agreement, StatOil and Talisman agreed to divide the oil and gas production on a 50-50 basis.   StatOil and Talisman sell their own share of the production, are required to properly report their half of the volumes to royalty owners, and must properly pay royalty owners.

22.     Plaintiff and Class Members are owners of the royalty rights for oil and gas leases in Eagle Ford that establish their rights to properly calculated royalty payments. The Development Agreement did not change Plaintiff's or Class Members' rights to proper royalty payments.

23.     Initially, Talisman acted as operator for all of the Eagle Ford joint venture acreage, with Statoil retaining a non-operating   working interest.   While the operator of record, StatOil and/or

Talisman were responsible for accurately reporting the oil and gas production to the Texas Rail Road Commission and state Comptroller.

24.     While the operator and/or joint venture partner with Statoil, Talisman began in late 2012 to commingle the gross production of oil, condensate and gas from various wells of differing ownership, including Plaintiff's wells, using extensive gathering and treatment facilities referred to as Central Gathering Points, Central Deliver Points and/or Central Receipt Points.

25.     StatOil's joint venturer, Talisman, has admitted that when it entered the Texas oil and gas market, it did not have the capability to manage the complexities of the leases it was purchasing and entering into and its production accounting system was incapable of proper allocation of commingled oil and gas production and sales.

26.     Effective July 1, 2013, StatOil and Talisman modified their Joint Development Agreement so as to divide responsibility for drilling and operating wells in the joint venture acreage, including those in which Plaintiff and Class Members owned royalty interests.

27.     According to the Joint Development Agreement modification effective July 1, 2013, Talisman continued operating wells within the western and central portion of the shared holdings, and StatOil agreed to operate the wells in the eastern portion of the shared acreage.  However, Talisman continues to market its own share of production and maintain a revenue accounting function to account for the revenues received from sales of production  and allocate revenues back to each owner on a per-well basis.

28.     In December of 2015, StatOil and Talisman further amended the Joint Development Agreement to provide that Statoil now serves as operator for all wells within the joint venture acreage, with Talisman retaining a non-operating working interest.

29.     Unbeknownst to Plaintiff and Class Members, StatOil and Talisman's joint decision to commingle gross oil and gas production from wells of differing ownership interest created certain challenges when allocating the commingled sales of those production volumes back to the individual wells. Texas law requires that a "commingler" identify each royalty owner's aliquot share of production commingled and sold with reasonable certainty. StatOil and its joint venturer, Talisman, did not properly allocate these commingled sales of those production volumes.

30.     In addition to their commingling and allocation problems, StatOil and Talisman jointly reduced the measured volumes of gas and oil by an across-the-board skim (the "Skim"). StatOil and Talisman used gross production volumes of condensate reduced by as much as 30% to estimate net sales of condensate  then improperly  allocated those volumes back to the individual wells before improperly paying royalty owners, like Plaintiff, on the improperly shrunken volumes.

31.     The issues with joint venturer StatOil's and Talisman's commingling, allocating and shrinking were not clear to or discoverable by Plaintiff or royalty owners. While the Joint Development Agreement required StatOil and Talisman to share production and pay royalties  on a 50-50 basis, the information and format of Talisman's check stubs were different from the information and format of Statoil's check stubs and for production and production adjustments during different time periods than those reflected on check stubs, it was difficult, if not impossible, for Plaintiff and Class Members to determine the net difference, let alone the reason for the net difference, in royalty payments.

32.     StatOil's joint venture, Talisman, has admitted to reducing Plaintiff's and Class Members' royalty payments based on "shrinkage." Talisman has also admitted that if it could not justify its lower production volume, so both StatOil and Talisman, via joint venture, would be legally

responsible to make additional royalty payments to royalty owners pursuant to their respective lease agreements.

33.     In response to royalty owner's questions regarding the difference in the royalty payments between Talisman and Statoil, Talisman explained away the Skim by contending that in transporting and marketing oil, certain volumes of condensate (light oil) do not qualify for royalty payments because they are lost to "shrinkage."

34.     In the oil and gas industry, shrinkage refers to the difference between production amounts produced at the wellhead entering a pipeline for sale.  Shrinkage attributable to a given well is not a static percentage.  There is no domestic oil industry standard or common practice which allows for application   of a fixed shrinkage factor to estimate sales.   Moreover, based upon information and belief, StatOil's joint venturer, Talisman's own personnel, concluded shrinkage, if applicable, could never approach the 20% Skim, and certainly never 30%.

35.     Any reduction of royalty payments under a mineral rights lease must be permitted and justified, either from actual measurement or established American domestic oil industry standards. Plaintiff's and Class Members' materially similar lease provisions require   joint venturers StatOil and Talisman   to pay on actual   sales not estimated, commingled, allocated, shrunken   or calculated net sales volumes as done here.

36.     Regardless whether the production volume is measured   at the well head, after separation, or at the point of sale, under no circumstances do the applicable leases permit the aforementioned Skim.

37.     In employing the Skim for the purpose of shorting royalty payments to Plaintiff and Class Members, StatOil and its joint venturer Talisman engaged in actions that were arbitrary, capricious, and in bad faith.

38.     StatOil and its joint venturer Talisman has     also arbitrarily manipulated production volumes and royalty payments from joint venture wells operated by Talisman and reported shrunken and improperly allocated net sales volumes to the Texas Rail Road Commission and State Comptroller.

39.     Complaints were made about the discrepancies between royalty checks from StatOil and Talisman, but only misleading explanations were provided.

## VI. EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

40.      StatOil and its joint venturer Talisman arbitrarily and unilaterally manipulated royalty owner payments by estimating sales volumes through the shrinking of gross production volumes and improperly allocating commingled production and net sales volumes.

41.      StatOil and its joint venturer Talisman intentionally concealed the actions herein described in the forgoing paragraphs to ensure the continuation of those activities and forestall legal action.

42.     Without access to the Joint Development Agreement, well production, run sheets and gauge reports, and StatOil's and Talisman's sale and distribution agreements, Plaintiff and Class members alike would be both unable to determine the extent and nature of StatOil's   and its joint venturer Talisman's wrongful conduct or the financial harm suffered because of  such conduct. None of these documents critical to exposing StatOil's and its joint venturer Talisman's   wrongful conduct were given to Plaintiff or Class Members.   Thus, Plaintiff   and Class Members were left inadequate information. Moreover, Statoil and Talisman did not simply disclose its commingling,

allocating and estimating to Plaintiff and Class Members. Moreover, StatOil and Talisman concealed or obfuscated such information such that neither Plaintiff nor Class Members could reasonably ascertain the issues discussed herein.

43.     By its very nature, StatOil's  and its joint venturer Talisman's activity, as alleged herein, was self-concealing. Plaintiffs had no knowledge of StatOil's   and its joint venturer Talisman's deceitful conduct and could not have discovered same by the exercise of due diligence.

44.     As a result of StatOil's  and its joint venturer Talisman's fraudulent  concealment  of its conduct, and the self- concealing  nature of their acts, Plaintiff asserts the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiff and Class Members.

45.     StatOil is equitably estopped from asserting that any otherwise applicable limitations period has run.

## VII. THE DISCOVERY RULE

46.     Plaintiff did not discover, nor should Plaintiff have reasonably discovered, StatOil's   and its joint venturer Talisman's wrongful conduct causing their injuries until recently, prior to the filing of this complaint.

47.     Plaintiff did not discover, nor should Plaintiff reasonably have discovered, (1) the injuries and (2) the identity of the person(s) whose wrongful conduct caused the injuries, until recently, prior to the filing of this complaint.

48.     The discovery rule applies to toll the statute of limitations as to all causes of action against StatOil and its joint venturer Talisman, and other responsible parties identified by discovery in this matter.

## VIII. CLASS ACTION ALLEGATIONS

49.     This action asserts claims on behalf of a class pursuant to Federal Rules of Civil Procedure

23(a), (b)(l), (b)(2), (b)(3), and (c)(4) as follows:

> All persons who, pursuant to an oil and gas lease within the Texas, Eagle
> Ford Shale, received between January 1, 2010 and May 4, 2018 royalty payments
> from StatOil and/or its joint venturer Talisman attributable to production, including
> but not limited to, gas, oil, condensate and all hydrocarbons separated,
> extracted or manufactured from gas that was commingled with production from
> one or more other wells, and to whom StatOil and/or its joint venturer Talisman
> paid such royalties using a volumetric allocation methodology of net production
> sold and/or estimated "shrunk" production volumes.

50.     Excluded from the Class are (i) StatOil and its employees, principals, affiliated entities,

legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned,

any members of their immediate families, (iii) and any clerk or staff assigned to those judges.

51.     There are thousands of potential members of the Class who are geographically dispersed

throughout the United States. Therefore, individual joinder of all members of the Class would be

impractical.

52.     There is a well-defined community of interest in the questions of law and fact affecting the

parties represented in this action.

53.     Common questions of law or fact exist as to all members of the Class. These questions

predominate over the questions affecting only individual Class members. The predominate legal

and factual questions in this case include, but are not limited to:

> a.  Whether the Skim Scheme methodology was applied to Plaintiff and all Class
>     Members alike, and whether that Skim Scheme's methodology reduced
>     royalty payments due Plaintiff and all Class Members.
>
> b.  Whether StatOil and/or its joint venturer Talisman voluntarily commingled
>     the gross oil and gas production of multiple wells with differing ownership
>     interests;

b.   Whether StatOil and/or its joint venturer Talisman can identify with reasonable certainty each royalty owner's aliquot share of gross production and resulting net sales;

c.   Whether StatOil and/or its joint venturer Talisman improperly  allocated net sales back to the individual wells in violation of industry standards and common practice:

d.   Whether  StatOil and/or its joint venturer Talisman  used an industry accepted  standard or practice  when they estimated  nets sales of condensate by use of a common  methodology   to arbitrarily reduce production volumes of oil and gas;

e.   Whether StatOil's and/or its joint venturer Talisman's application of a 20%-30% Skim in calculating royalties to Class Members was justified, either from actual measurement or established American domestic oil industry standards;

f.   Whether StatOil and/or its joint venturer Talisman breached the materially similar lease provisions of Plaintiff and Class Member regarding the volumes for which royalty payments are made;

g.   Whether the commingling, allocating and arbitrary shrinking of production volumes of oil and gas resulted in reduced royalty payments to Plaintiff and Class Members;

h.   Whether StatOil and/or its joint venturer Talisman disclosed, accounted for and reported correctly to Plaintiff and Class Members the volumes of oil and gas production   on which it owed royalties;

1.   Whether StatOil's and/or its joint venturer Talisman's commingling gross production, allocating net sales and use of the Skim violated its duties to Plaintiff and Class Members to honestly account for and pay royalties;

J.   Whether the check stubs furnished by StatOil and/or its joint venturer Talisman with royalty payments complied with Texas law; and

k.   The appropriate measure of damages, penalties, interest, equitable and/or declaratory relief.

54.   The Skim Scheme methodology applied to Plaintiff and all Class Members alike.  The Skim

Scheme's calculation is one of a simple methodology that applies an across-the-board number to

Plaintiff and all Class Members.  Under well settled law, variances in the amount of damages of individual class members do not preclude class certification.

55.     Plaintiff's claims are typical claims of the Class in that Plaintiff has materially similar lease agreements as other members of the class entitling them to royalty payments from the gross production volume sold. Plaintiff's claims are also not subject to any unique defenses. Therefore, there are no significant differences in any relevant respect from any other Class member, and the relief sought is common to the Class.

56.     Plaintiff is an adequate representative of the Class because he has no interests adverse to or in conflict with members of the Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation, and litigation regarding the rights of mineral owners. Plaintiff and his counsel will adequately protect the interests of the Class.

57.     StatOil and its joint venturer Talisman have engaged in a pattern of misconduct common to the entire Class so that class-wide relief is appropriate.

58.     The common  pattern  of StatOil's and joint venturer Talisman's  misconduct  and the common  theories  for redressing that misconduct make a class action superior to other available methods for fairly and efficiently adjudicating  the underlying  dispute.  The damages suffered by each individual Class Member  on balance  are relatively  small, while the burden  and monetary  expense  needed to individually  prosecute  this case against StatOil is substantial. Thus, it would be virtually impossible  for Class Members  individually  to redress  effectively the wrongs  done to them. Moreover, even if Class Members could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation.

59.     By contrast, a class action presents far fewer litigation management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  The class is readily definable and prosecution as a class action will eliminate the possibility of repetitious litigation while also providing redress for those claims that may be too small to warrant the expenses of individual, complex litigation.  Also, or in the alternative, the Class may be certified because StatOil has acted or refused to act on grounds generally applicable to the Class, thereby making preliminary and final declaratory relief appropriate.

60.     In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the Class.  A class action can determine the legality of Defendants' actions relative to all class members with judicial economy.

61.     Further, in the alternative, the Class may be maintained as a class action with respect to particular issues pursuant to FED.R.CIV.P. 23(c)(4).

62.     All records concerning each of the leases, volumes of gas and oil production, and royalty payments from StatOil are in the possession and control of StatOil and its agents and are available through discovery.

## IX. CLAIMS
### COUNT 1
### BREACH OF
### CONTRACT

63.     Plaintiff incorporates by reference all preceding paragraphs.

64.     Plaintiff and Class Members executed valid and enforceable contracts in the form of oil and gas leases, directly or through assignments, with StatOil.

65.     Plaintiff, as party to the lease and assignments, is the proper party to enforce the terms of the relevant leases and assignments and has performed, or has substantially performed, all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the relevant leases and assignments.

66.     Pursuant  to the materially  similar  terms  of Plaintiff's  and  Class  Members' applicable oil and gas leases, StatOil promised to make royalty payments based on the actual production volume of gas and oil sold.

67.     Plaintiff  and  Class  Members  are, and  have  been, entitled  to  StatOil's performance of its obligations under the relevant leases and assignments to make royalty payments based on the actual production volume of gas and oil sold.

68.     StatOil materially   breached the gas and oil leases applicable to Plaintiff and Class Members by paying royalty owners based on estimated production volumes sold as a result of StatOil improperly allocating net sales from commingled production and applying the Skim to gross production volumes and thereby reducing the royalty payments owed to Plaintiff and Class Members.

69.     StatOil has refused and continues to refuse to perform its obligations to pay Plaintiff and Class Members royalty payments based on the actual production volumes of gas and oil sold as required by the applicable lease agreements.

70.     As of the filing of this Complaint Statoil has not tendered the amounts owed to Plaintiff or Class Members.

71.     Defendants have materially breached its contractual obligations to Plaintiff and Class Members, including the express terms set out above in the Facts. Examples of such breaches include but are not limited to the following:

      a.  Through the Skim Scheme, reducing production volumes of oil, or liquid or liquefiable hydrocarbons and/or natural gas produced from the relevant lands by approximately 20% - 30% without notice or contract support under the existing oil and gas lease contracts;

      b.  Failing to pay the agreed royalty payments for oil or liquid or liquefiable hydrocarbons produced and sold from the relevant lands as provided for in their oil and gas lease;

      c.  Failing to pay royalties on all oil, condensate and gas produced and sold from the relevant lands as provided for in their oil and gas lease; and

      d.  Refusing to provide Plaintiffs, among other materials, relevant and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands.

72.     As a direct and proximate cause of StatOil's contractual breaches, Plaintiff and Class Members have been damaged for which they are entitled to recover actual damages, consequential damages, interest, penalties, attorneys' fees, and any other legal or equitable relief deemed appropriate by the Court.

## COUNT 2
## ACCOUNTING

73.     Plaintiff incorporates by reference all preceding paragraphs.

74.     Damages alone will not compensate Plaintiff and Class Members for their collective loss of royalty payments consistent with their oil and gas lease contracts. The facts and accounts presented are so complex that adequate relief may not be obtained at law. Standard discovery procedures, such as requests for production, interrogatories, and subpoenas *duces tecum,* may

prove inadequate to provide Plaintiff and Class Members with the information sought regarding royalty payments.

75.      Plaintiff and Class Members seek an accounting pursuant to the information required under Texas Natural Resources Code Section 91, *et seq.* as follows:

     a.  For past and present monthly production volumes of oil, liquids, condensate, liquefied hydrocarbons and natural gas by well for Plaintiff and Class Members as reported to the Texas Comptroller or other state or federal agency, to royalty owners by StatOil, as recorded by any third-party vendor contracted by StatOil to test, sample or record such volumes;

     b.  For past and present royalty payments made to Plaintiff and Class Members on the production of oil, liquids, condensate, liquefied hydrocarbons and natural gas production volumes, and substances; and

     c.  For past and present deductions by category of expense or other deductions including but not limited to deductions for "shrinkage," and for past and present information supporting any deduction or expense from or to production volumes or royalty payments.

**COUNT 3**
**UNJUST**
**ENRICHMENT**

76.      Plaintiff incorporates by reference all preceding paragraphs. This Count is brought in the alternative.

77.      StatOil has been unjustly enriched because of the Skim Scheme, commingling, improperly allocating, shrinking and underpayment of royalties owed to Plaintiffs and Class Members as described herein.

78.      Plaintiff and Class Members, in justice and fairness, are entitled to restitution of all underpayments of royalties caused by such wrongful acts and omissions which unjustly enriched StatOil, recovery of reasonable attorneys' fees, recovery of statutory penalties and interest as provided at Tex.Nat.Res. Code §§91.401 ~ 91.404, punitive damages and any and all other equitable relief deemed appropriate by the court.

## COUNT 4
## DECLARATORY
## JUDGMENT

79.     Plaintiff incorporates by reference all preceding paragraphs.

80.     Plaintiff and Class Members are entitled to a declaratory judgment: (a) declaring StatOil liable to Plaintiff and Class Members for the wrongful acts, omissions, practices, and schemes described above, (b) ordering StatOil to provide complete and accurate check stub information, as required by TEX.NAT.RES. CODE §91.502, (c) granting Plaintiff and Class Members such other or additional declaratory and/or injunctive relief relating to such wrongful acts, omissions, practices, and financial/accounting schemes as may be available under the law and deemed appropriate   by the Court, and/or (f) awarding attorneys' fees as provided for by contract or pursuant to TEX.NAT.RES. CODE §91.406, and TEX.CIV.PRAC. & REM. CODE 38.001 *et seq.*

## X. REQUEST FOR RELIEFAND PRAYER

81.     WHEREFORE, Plaintiff, on behalf of himself and on behalf of all other Class Members, request an award and relief as follows:

   a.   An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and undersigned counsel be appointed Class Counsel;

   b.   A determination that StatOil breached obligations owed to Plaintiff and Class Members;

   c.   A declaration and Order providing the other declaratory and injunctive relief requested throughout this Complaint;

   d.   An Order requiring StatOil to provide an accounting of past and present royalty payments for Plaintiff and Class Members;

   e.   Actual and consequential damages in an amount to be determined at trial;

   f.   Applicable statutory penalties for Claims for which they are available;

   g.   Punitive damages for Claims for which they are available;

h.   Equitable and/or declaratory relief for Claims for which they are available;

i.   An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre-and post-judgment interest at the highest rate allowed by law;

j.   An order declaring that StatOil is financially responsible for notifying all Class Members of this action; and

k.   Such other and further relief as may be deemed necessary or appropriate.

## XI.  DEMAND F O R  JURY  TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**THE FERGUSON LAW FIRM, LLP**
350 Pine Street, Suite1440
Beaumont, Texas 77701
Tel: 409.832.9700
Fax: 409.832.9708

By:  **/s/ Jane S. Leger**
        Jane S. Leger
State Bar No. 00788814
jleger@thefergusonlawfirm.com
By: **/s/ Paul "Chip" Ferguson**
        Paul "Chip" Ferguson
State Bar No. 06919200
cferguson@thefergusonlawfirm.com
By: **/s/ Mark C. Sparks**
        Mark C. Sparks
State Bar No. 24000273
mark@thefergusonlawfirm.com

AND

By: **/s/ Layne Walker**
        Layne Walker
State Bar No. 20713900
Walkerlaw3@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYANNE REGMUND, GLORIA JANSSEN, MICHAEL NEWBERRY and CAROL NEWBERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TALISMAN ENERGY USA, INC.<br><br>Defendant. | Civil Action No.:<br><br>Class Action<br><br>JURY TRIAL DEMANDED<br><br>Electronically Filed |

**FIRST AMENDED COMPLAINT – CLASS ACTION**

Rayanne Regmund, Gloria Janssen , Michael Newberry and Carol Newberry, (collectively hereinafter "Plaintiffs") by and through their undersigned counsel, on behalf of themselves and all others similarly situated, allege facts and claims upon their personal knowledge as to matters relating to themselves, and upon information and belief as to all other matters based upon the investigation of counsel, as follows:

## I.  INTRODUCTION

1.     This action is brought to remedy the systemic breach of contract by Talisman Energy USA, Inc. ("Talisman") in connection with Talisman's failure to properly calculate and pay Plaintiffs and Class Members contractually owed oil and gas royalties that uniformly required payment on the volume of production actually sold.  Instead, in late 2012 or early 2013, Talisman began paying oil and gas royalties to Plaintiffs and Class Members using estimated production and sales volumes initially resulting from Talisman's commingling of one royalty owner's well production with the production of other wells of differing ownership interest.  In late 2013,



Talisman compounded its error by estimating sales volumes from manipulated wellhead production data that Talisman arbitrarily and improperly reduced by 20% and then 30% (the "Skim").

2.      Talisman Energy USA, Inc., based in Warrendale, Pennsylvania, owns working interests in 2,900 oil and gas leases in the South Texas Eagle Ford shale play in which Plaintiffs and Class Members own mineral rights. From at least January 2013, Talisman Energy USA, Inc. has systematically failed and refused to pay Plaintiffs and Class Members the full royalties due and owing under certain oil and gas leases of mineral rights and assignments thereof.

3.      Based on Talisman's contract breaches, Plaintiffs seek, amongst other things, damages in the amounts improperly paid and/or withheld by Talisman due to the commingling, allocating and manipulation of both gross oil and gas production volumes and net sales volumes. Skim, declaratory relief to stop Talisman from withholding royalty payments in the future based on the Skim, and an accounting showing the precise method and amounts of royalty payments improperly paid by Talisman and owed to Plaintiffs. withheld.

4.      Plaintiff Rayanne Regmund is a resident of the State of Texas, residing in Kennedy Texas. Ms. Regmund is a royalty interest mineral owner within the Talisman/Statoil Eagle Ford Shale Development Agreement acreage. On September 20, 2010, she entered into an oil and gas lease agreement with Enduring Resources, LLC for the development, production and sale of oil and gas from one acre located in Karnes County, Texas. See Exhibit A, Memorandum of Oil and Gas Lease evidencing Ms. Regmund's oil and gas lease. Ms. Regmund's lease was subsequently assigned, including all rights and obligations thereto, in favor of Talisman Energy USA, Inc. and Statoil Texas Onshore Properties, LLC ("Statoil") as part of their joint development agreement. Pursuant to the assigned oil and gas lease agreement, Ms. Regmund was to receive a 1/5th royalty

2

payment on all the actual oil, gas and other hydrocarbons produced and sold. Plaintiff's oil and gas mineral interest was combined with other mineral interest owners and made part of an oil and gas producing well unit(s) which said unit(s) was then connected to and its gross production of oil and gas was commingled with the production of other wells of differing ownership interest. Since such time Plaintiff Regmund has received royalty payments based upon estimated sales of oil and gas as opposed to actual sales volumes as required by her lease. In 2013, Plaintiff Regmund was notified of a modification to the joint venture relationship between Talisman and Statoil such that Statoil would assume operations of wells, well operations and the development of new wells in Karnes County, Texas including Plaintiff Regmund's royalty interest governed by the September 20, 2010 lease agreement. Around the time Plaintiff Regmund was advised of the change in operators, Talisman, unilaterally and arbitrarily reduced Plaintiff Regmund's royalty payments through the manipulation of production volumes. Plaintiff Regmund had for some time received two royalty checks - one from Talisman and one from Statoil. However, the checks and accompanying check stubs were differently formatted between Talisman and Statoil using different time periods so the difference in royalty payments between the two companies for the same time period was not readily discernable from the checks and check stubs. As a result of Talisman's actions, Plaintiff Regmund has been harmed by the loss of royalty payments owed to her under her oil and gas lease agreement.

     5.    Plaintiff Gloria Janssen is a resident of the State of Texas, residing in Runge, Texas. Ms. Janssen owns lease interests entitling her to royalty payments on the actual oil and gas produced and sold from wells operated by Talisman and Statoil. More specifically, Ms. Janssen represents Talisman Royalty Owner #2008809 and Statoil Royalty Owner # 103375. On June 21, 2011, Plaintiff Janssen entered into an oil and gas lease agreement with Talisman and Statoil for

3

the development, production and sale of oil and gas from approximately 4.292 acres over 10 tracts located in Karnes County, Texas. The lease agreement was subsequently amended on May 17, 2012 to increase the acreage to 4.35815397 involving 11 tracts. The lease was subsequently extended in May of 2014 to that acreage not made part of the Runge Town site Gas Unite #1. *See* Exhibit B, Memorandum of Oil and Gas Lease and associated Amendment(s) and Ratification(s). Pursuant to said oil and gas lease agreement, Plaintiff Janssen was to receive 1/5th royalty payment on all the actual oil, gas and other hydrocarbons produced and sold. Plaintiff Janssen's oil and gas mineral interest was combined with other mineral interest owners and made part of oil and gas producing well units including, but not limited to, the Wessendorff 4 - Slaughter (SA) B3H - royalty owner interest 0.051029; the Wessendorff 4 - Slaughter (SA) B2H - royalty owner interest 0.024483; Matula Gas Unit No. 1 - royalty owner interest 0.05074878 and the Runge Townsite GU. Those units were then connected to and the gross production of oil and gas was commingled with the production of other wells of differing ownership interest. Since such time Plaintiff Janssen has received royalty payments based upon estimated sales of oil and gas as opposed to actual sales volumes as required by her lease. In 2013, Plaintiff Janssen was notified of a modification to the joint venture relationship between Talisman and Statoil such that Statoil would assume operations of wells and the development of new wells in Karnes County, Texas including those involving her royalty interest under the lease agreement. Around the time Plaintiff Janssen was advised of the change in operators, Talisman, unilaterally and arbitrarily reduced Plaintiff Janssen's royalty payments through the manipulation of production volumes. Plaintiff Janssen had for some time received two royalty checks - one from Talisman and one from Statoil. However, the checks and accompanying check stubs were differently formatted between Talisman and Statoil using different time periods so the difference in royalty payments between the two companies for the

4

same time-period was not readily discernable from the checks and check stubs. As a result of Talisman's actions, Plaintiff Janssen has been harmed by the loss of royalty payments owed to her under her oil and gas lease agreements.

6.      Plaintiffs Michael Newberry and Carol Newberry are married and reside in the State of Texas, residing in Kennedy, Texas. Mr. and Mrs. Newberry jointly own oil and gas rights in property in the South Texas Eagle Ford shale play and granted lease interests therein entitling them to royalty payments from Talisman on the actual oil and gas produced and sold from wells operated by Talisman and Statoil. On June 1, 2007, September 16, 2009 and October 2012, Mr. Newberry or Mr. and Mrs. Newberry entered into oil and gas lease agreements and/or Revivor and Extension agreements with some combination of lessees - Enduring Resources, LLC, Allan Exploration, Talisman and Statoil – for the development, production and sale of oil and gas from four tracts involving 29.90, 32.60, 28.80, 32.00 acres located in Karnes County, Texas. *See* Exhibit C, Memorandum of Oil and Gas Leases. All relevant and controlling lease agreements were ultimately assigned and/or owned by Talisman and Statoil under their joint development agreement. Pursuant to Mr. and Mrs. Newberry's oil and gas lease agreements and assignments, they were to receive 1/5th royalty payment on all oil, gas and other hydrocarbons produced and sold. The Newberrys' oil and gas mineral interest were combined with other mineral interest owners and made part of oil and gas producing well units including but not limited to, the Evangeline GU 01-01, Uszynski - Furlow B3H, and Escondido Creek Evangeline. Those units were then connected to and the gross production of oil and gas was commingled with the production of other wells of differing ownership interest. Since such time Plaintiffs Newberry have received royalty payments based upon estimated sales of oil and gas as opposed to actual sales volumes as required by her lease. In 2013, the Newberrys were notified of a modification to

5

the joint venture relationship between Talisman and Statoil such that Statoil would assume operations of wells and the development of new wells in Karnes County, Texas including those involving their royalty interest governed by the above lease agreements. Shortly being advised of the change in operators, Talisman, unilaterally and arbitrarily reduced the Newberrys' royalty payments through the manipulation of production volumes. Plaintiffs had for some time received two royalty checks - one from Talisman and one from Statoil. However, the checks and accompanying check stubs were differently formatted between Talisman and Statoil using different time periods so the difference in royalty payments between the two companies for the same time period was not readily discernable from the checks and check stubs. As a result of Talisman's actions, the Newberrys have been harmed by the loss of royalty payments owed to them under their oil and gas lease agreements.

7.      Defendant Talisman Energy USA, Inc. a Delaware corporation, is an oil and gas exploration and production company whose principal place of business is located at 50 Pennwood Place, Warrendale, Pennsylvania 15086. Talisman is a subsidiary of Calgary, Alberta based Talisman Energy, Inc., which was acquired by Spanish energy company Repsol S.A. on or about May 8, 2015.

## II.      JURISDICTION

8.      Jurisdiction of this Court is proper under 28 U.S.C. §1332 (d).    Diversity jurisdiction exists and Plaintiffs each reside in Texas, and Talisman is a Delaware corporation with its principal place of business in Warrendale, Pennsylvania.   The Class consists of citizens and residents of states across the country having oil and gas rights for property located in Texas.   The amount in controversy exceeds $5,000,000.00 for Representative Plaintiffs and members of the

Class collectively, exclusive of interests and costs, by virtue of the amount of royalties Talisman failed to pay pursuant to its contractual obligations, and by virtue of the declaratory relief sought.

### III.  VENUE

9.      Venue was proper within the judicial district for the Western District of Pennsylvania where this action was commenced pursuant to 28 U.S.C. § 1391 because Talisman's principal place of business is located in Warrendale, Pennsylvania in Allegheny County within this district, and a substantial part of the events giving rise to Plaintiffs' and the Class Members' claims occurred in this district. Pursuant to Talisman's Motion to Transfer Venue (Dkt. 29), the Pennsylvania Court transferred this case to the Southern District of Texas, Houston Division, finding venue is more appropriate within this judicial district where the wells at issue are located and certain of the Plaintiffs and Class Members reside.

### IV.  FACTS

10.     Plaintiffs and Class Members own royalty rights and interests arising from oil and gas leases in the South Texas Eagle Ford shale play ("Eagle Ford"). These royalty interest owners include individuals, partnerships, trusts, corporations and other entities residing both in Texas, and throughout the United States. Talisman is an upstream oil and gas production company; an indirect subsidiary of Calgary, Alberta-based Talisman Energy Inc., ("TEI") which was acquired for $13 Billion by an affiliate of the Spanish integrated energy company Repsol S.A. on May 8, 2015

11.     In Texas, gas and oil leases permit royalty payments to be calculated based on the amount of gas or oil as determined either at the wellhead or the amount that enters the pipeline for sale and may be based on production of oil and gas, or sales of the produced oil and gas.

12.     The production of oil, condensate and natural gas at a well site is measured daily at the wellhead by a meter.

13.     Pursuant to Texas oil and gas law, the operating entity is responsible for reporting all required well production data to Texas Comptroller of Public Accounts (hereinafter "Texas Comptroller"). Title 16, Tex. Nat. Res. Code.  Reports to the Texas Comptroller include both volumes sold and revenues received, by product reported.

14.     Texas law also requires that any entity paying oil and gas royalties must accompany the payment with a check stub from the payor containing details, *inter alia*, of well identification, volume of production, price, decimal interest (the royalty owner's share of production from the drilling unit), expense deductions and taxes. Tex. Nat. Res. Code §§91.501-91.502.  The required check stub detail is intended to allow the royalty recipient to verify that the payment accords with the payor's obligation under applicable leases.

15.     In 2010, Talisman entered the Texas oil and gas market and opened a Texas office whereby it acquired extraction rights under numerous oil and gas leases in the Eagle Ford shale including those owned by Plaintiffs and the Class Members. Talisman also entered into the South Texas Joint Development Agreement (the "Development Agreement"), which created a joint venture between Talisman and Statoil to explore, develop and produce oil and gas.  Statoil also owns extraction rights under numerous oil and gas leases in the Eagle Ford.

16.     The Development Agreement obligated the well operator to report all well production data to the non-operating partner in a manner consistent with and as required by the Texas Comptroller, so that both the operator and non-operating partner could comply with Texas law governing royalty payments, expenses, adjustments and deductions thereto and documentation including check stubs to mineral rights owners.

17.     Under the Development Agreement, Talisman and Statoil agreed to divide the oil and gas production on a 50-50 basis.  Talisman and Statoil sell their own share of the production, are required to report their half of the volumes to royalty owners, and must pay royalty owners based on the actual production volumes sold.

18.     Plaintiffs and Class Members are owners of the royalty rights for oil and gas leases in Eagle Ford that establish their rights to royalty payments and the amounts they are to be paid based on the actual volume of gas and oil produced and sold.  The Development Agreement did not change Plaintiffs or Class Members' rights to royalty payments based on the actual production volume of gas and oil produced and sold.

19.     Initially, Talisman acted as operator for all of the Eagle Ford joint venture acreage, with Statoil retaining a non-operating working interest.  As the operator of record, Talisman was responsible for reporting the oil and gas production to the Texas Rail Road Commission and state Comptroller.

20.     As the operator and joint venture partner with Statoil, Talisman began in late 2012 to commingle the gross production of oil, condensate and gas from various wells of differing ownership including Plaintiffs' wells, through the use of extensive gathering and treatment facilities referred to as Central Gathering Points, Central Deliver Points and/or Central Receipt Points.

21.     Talisman has admitted that when it entered the Texas oil and gas market, it did not have the capability to manage the complexities of the leases it was purchasing and entering into and its production accounting system was incapable of proper allocation of commingled oil and gas production and sales.

9

22.   Effective July 1, 2013, Talisman and Statoil modified their Development Agreement so as to divide responsibility for drilling and operating wells in the joint venture acreage, including those in which Plaintiffs and Class Members owned royalty interests.

23.   According to the Development Agreement modification effective July 1, 2013, Talisman continued operating wells within the western and central portion of the shared holdings, and Statoil agreed to operate the wells in the eastern portion of the shared. However, Talisman continues to market its own share of production and maintain a revenue accounting function to account for the revenues received from sales of production and allocate revenues back to each owner on a per-well basis.

24.   In December 2015, Statoil and Talisman further amended the Development Agreement to provide that Statoil now serves as operator for all wells within the joint venture acreage, with Talisman retaining a non-operating working interest.

25.   Unbeknownst to Plaintiffs and Class Members, Talisman's decision to commingle gross oil and gas production from wells of differing ownership interest created certain challenges when allocating the commingled sales of those production volumes back to the individual wells. Texas law requires that a "Commingler" identify each royalty owner's aliquot share of production commingled and sold with reasonable certainty.

26.   Talisman compounded its commingling and allocation problems by implementing a scheme to alter wellhead production data received from Statoil, reducing the measured volumes of gas and oil by an across the board (the "Skim"). Between the production months of June 2013 and March 2016, Talisman used gross production volumes of condensate reduced by as much as 30% to estimate net sales of condensate then improperly allocated those volumes back to the individual wells before paying royalty owners on the shrunken volumes.

27.     The issues with Talisman's commingling, allocating and shrinking were not readily apparent to or discoverable by royalty owners. While the Development Agreement required Talisman and Statoil to share production and pay royalties on a 50-50 basis, the information and format of Talisman's check stubs were different from the information and format of Statoil's check stubs and for production and production adjustments during different time periods than those reflected on Statoil's check stubs, it was difficult, if not impossible, for Plaintiffs to determine the net difference, let alone the reason for the net difference, in royalty payments.

28.     Talisman has admitted to reducing Plaintiffs' and Class Members' royalty payments based on "shrinkage.".  Talisman has also admitted that if it could not justify its lower production volume, it would be legally responsible to make additional royalty payments to royalty owners pursuant to their respective lease agreements.

29.     In response to royalty owner's questions regarding the difference in the royalty payments between Talisman and Statoil, Talisman explained away the Skim by contending that in transporting and marketing oil, certain volumes of condensate (light oil) do not qualify for royalty payments because they are lost to "shrinkage."

30.     In the oil and gas industry, shrinkage refers to the difference between production amounts produced at the wellhead and that which enters a pipeline for sale.  Shrinkage attributable to a given well is not a static percentage and there is no domestic oil industry standard or common practice which allows for application of a fixed shrinkage factor to estimate sales.  Moreover, based upon information and belief, Talisman's own personnel concluded. shrinkage, if applicable, could never approach the 20% Skim, and certainly never 30%.

31.     Any reduction of royalty payments under a mineral rights lease must be permitted by the lease contract and justified, either from actual measurement or established American

domestic oil industry standards. Plaintiffs' and Class Members' materially similar lease provisions require Talisman to pay on actual sales not estimated, commingled, allocated, shrunken or calculated net sales volumes as Talisman did here.

32.     Regardless of whether the production volume is measured at the well head, after separation or at the point of sale, under no circumstances do the applicable leases permit the aforementioned Skim.

33.     In employing the Skim for the purpose of shorting royalty payments to Plaintiffs and Class Members, Talisman engaged in actions that were arbitrary, capricious and in bad faith.

34.     Talisman has also arbitrarily manipulated production volumes and royalty payments from joint venture wells operated by Talisman and reported shrunken and improperly allocated net sales volumes to the Texas Rail Road Commission and State Comptroller.

35.     Plaintiffs have complained to Talisman about the discrepancies between royalty checks from Talisman and Statoil, but Talisman has offered only misleading explanations. Only after Plaintiffs filing of this suit did Talisman offer restitution to certain royalty owners for payment shortages attributable to the Skim.

## V.     EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

36.     Talisman arbitrarily and unilaterally manipulated royalty owner payments by estimating sales volumes through the shrinking of gross production volumes and improperly allocating commingled production and net sales volumes.

37.     Talisman intentionally concealed the actions herein described in the forgoing paragraphs to ensure the continuation of those activities and forestall legal action.

38.     Without access to the Development Agreement, well production, run sheets and gauge reports, and Talisman's sale and distribution agreements, Plaintiffs and Class members alike

would be both unable to determine the extent and nature of Talisman's wrongful conduct or the financial harm suffered as a result of such conduct. None of these documents critical to exposing Talisman's wrongful conduct were given to Plaintiffs or Class Members. Thus, Plaintiffs and Class Members were left with the check stubs that Talisman manipulated as their sole source of information. Moreover, Talisman did not simply disclose its commingling, allocating and estimating to Plaintiffs and Class Members. Rather, that information and Talisman's related misconduct only came to light when it was fist revealed by former Talisman employee(s) in or around February 2015.

39.     By its very nature, Talisman's activity, as alleged herein, was self-concealing. Plaintiffs had no knowledge of Talisman's deceitful conduct and could not have discovered same by the exercise of due diligence.

40.     As a result of Talisman's fraudulent concealment of its conduct, and the self-concealing nature of its acts, Plaintiffs assert the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiffs.

41.     Talisman is hereby equitably estopped from asserting that any otherwise applicable limitations period has run.

## VI.     THE DISCOVERY RULE

42.     Plaintiffs did not discover, nor should Plaintiffs have reasonably discovered, Talisman's wrongful conduct causing their injuries until Talisman's conduct was revealed by former Talisman employee(s) in or around February 2015.

43.     Plaintiffs did not discover, nor should Plaintiffs reasonably have discovered, (1) the injuries and (2) the identity of the person(s) whose wrongful conduct caused the injuries, until February 2015.

44.     The discovery rule applies to toll the statute of limitations as to all causes of action against Talisman and other responsible parties identified by discovery in this matter.

## VII.    CLASS ACTION ALLEGATIONS

45.     This action asserts claims on behalf of a class pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4) as follows:

> All persons who, pursuant to an oil and gas lease within the Texas, Eagle Ford Shale, received between January 1, 2013 and June 1, 2016, royalty payments from Talisman attributable to production, including but not limited to, gas, oil, condensate and all hydrocarbons separated, extracted or manufactured from gas that was commingled with production from one or more other wells, and to whom Talisman paid such royalties using a volumetric allocation methodology of net production sold and/or estimated "shrunk" production volumes.

46.     Excluded from the Class are (i) Talisman and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

47.     There are 3,957 potential members of the Class who are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impractical.

48.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

49.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. The predominate legal and factual questions in this case include, but are not limited to:

a.  Whether Talisman voluntarily commingled the gross oil and gas production of multiple wells with differing ownership interests;

b.  Whether Talisman can identify with reasonable certainty each royalty owner's aliquot share of gross production and resulting net sales;

c. Whether Talisman improperly allocated net sales back to the individual wells in violation of industry standards and common practice:

d. Whether Talisman used an industry accepted standard or practice when it estimated nets sales of condensate by use of a common methodology to arbitrarily reduce production volumes of oil and gas;

e. Whether Talisman's application of a 20%-30% Skim in calculating royalties to Class Members was justified, either from actual measurement or established American domestic oil industry standards;

f. Whether Talisman breached the materially similar lease provisions of Plaintiffs and Class Member regarding the volumes for which royalty payments are made;

g. Whether the commingling, allocating and arbitrary shrinking of production volumes of oil and gas resulted in reduced royalty payments to Class Members;

h. Whether Talisman disclosed, accounted for and reported correctly to Plaintiffs and Class Members the volumes of oil and gas production on which it owed royalties;

i. Whether Talisman's commingling gross production, allocating net sales and use of the Skim violated its duties to Plaintiffs and Class Members to honestly account for and pay royalties;

j. Whether the check stubs furnished by Talisman with royalty payments complied with Texas law; and

k. The appropriate measure of damages, penalties, interest, equitable and/or declaratory relief.

50. Although each class member's damages will have to be calculated individually, the calculation is one of simple mathematics and under well settled law, variances in the amount of damages of individual class members do not preclude class certification.

51. Plaintiffs' claims are typical claims of the Class in that Plaintiffs have materially similar lease agreements as other members of the class entitling them to royalty payments from the gross production volume sold. Plaintiffs' claims are also not subject to any unique defenses. Plaintiffs, therefore, are no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

15

52.    Plaintiffs are adequate representatives of the Class because they have no interests adverse to or in conflict with members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, and litigation regarding the rights of mineral owners.  Plaintiffs and their counsel will adequately protect the interests of the Class.

53.    Talisman has engaged in a pattern of misconduct common to the entire Class so that class-wide relief is appropriate.

54.    The common pattern of Talisman's misconduct and the common theories for redressing that misconduct make a class action superior to other available methods for fairly and efficiently adjudicating the underlying dispute. The damages suffered by each individual Class Member on balance are relatively small, while the burden and monetary expense needed to individually prosecute this case against Talisman is substantial.  Thus, it would be virtually impossible for Class Members individually to redress effectively the wrongs done to them. Moreover, even if Class Members could afford individual actions, a multitude of such individual actions still would not be preferable to class-wide litigation.

55.    By contrast, a class action presents far fewer litigation management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  The class is readily definable and prosecution as a class action will eliminate the possibility of repetitious litigation while also providing redress for those claims that may be too small to warrant the expenses of individual, complex litigation. Also, or in the alternative, the Class may be certified because Talisman has acted or refused to act on grounds generally applicable to the Class, thereby making preliminary and final declaratory relief appropriate.

56.     In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the Class. A class action can determine the legality of Defendant's actions relative to all class members with judicial economy.

57.     Further, in the alternative, the Class may be maintained as a class action with respect to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

58.     All records concerning each of the leases, volumes of gas and oil production, and royalty payments from Talisman are in the possession and control of Talisman and its agents and are available through discovery.

## VIII.  CLAIMS

### COUNT 1
### BREACH OF CONTRACT

59.     Plaintiffs incorporate by reference all preceding paragraphs.

60.     Plaintiffs and Class Members executed valid and enforceable contracts in the form of oil and gas leases, directly or through assignments, with Talisman. (See Exhibits A-C).

61.     Plaintiffs, as parties to the leases and assignments, are the proper parties to enforce the terms of the relevant leases and assignments and have performed, or have substantially performed, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the relevant leases and assignments.

62.     Pursuant to the materially similar terms of Plaintiffs' and Class Members' applicable oil and gas leases, Talisman promised to make royalty payments based on the actual production volume of gas and oil sold.

63.     Plaintiffs and Class Members are, and have been, entitled to Talisman's performance of its obligations under the relevant leases and assignments to make royalty payments based on the actual production volume of gas and oil sold.

64.     Talisman materially breached the gas and oil leases applicable to Plaintiffs and Class Members by paying royalty owners based on estimated production volumes sold as a result of Talisman improperly allocating net sales from commingled production and applying the Skim to gross production volumes and thereby reducing the royalty payments owed to Plaintiffs and Class Members.

65.     Talisman has refused and continues to refuse to perform its obligations to pay Plaintiffs and Class Members royalty payments based on the actual production volumes of gas and oil sold as required by the applicable lease agreements.

66.     Plaintiffs presented their claims to Talisman, and as of the filing of this Complaint Talisman has not tendered the amounts owed to Plaintiffs or Class Members.

67.     Defendant has materially breached its contractual obligations to Plaintiff(s), including the express terms set out above in the Facts. Examples of such breaches include but are not limited to the following:

a.  Reducing production volumes of oil, or liquid or liquefiable hydrocarbons and/or natural gas produced from the relevant lands by approximately 20% - 30% without notice or contract support under the existing oil and gas lease contracts;

b.  Failing to pay the agreed royalty payments for oil or liquid or liquefiable hydrocarbons produced and sold from the relevant lands as provided for in their oil and gas lease;

    c.   Failing to pay royalties on all oil, condensate and gas produced and sold from the relevant lands as provided for in their oil and gas lease; and

    d.   Refusing to provide Plaintiffs, among other materials, relevant and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands.

68.     As a direct and proximate cause of Talisman's contractual breaches, Plaintiffs and Class Members have been damaged for which they are entitled to recover actual damages, consequential damages, interest, penalties, attorneys' fees, and any other legal or equitable relief deemed appropriate by the Court.

## COUNT 2
## ACCOUNTING

69.     Plaintiffs incorporate by reference all preceding paragraphs.

70.     Damages alone will not compensate Plaintiffs and Class Members for their collective loss of royalty payments consistent with their oil and gas lease contracts; the facts and accounts presented are so complex that adequate relief may not be obtained at law; standard discovery procedures, such as requests for production, interrogatories, and subpoena *duces tecum*, may prove inadequate to provide Plaintiffs with the information sought regarding royalty payments.

71.     Plaintiffs and Class Members seek an accounting pursuant to the information required under Texas Natural Resources Code Section 91, *et seq.,* as follows:

    a.   For past and present monthly production volumes of oil, liquids, condensate, liquefied hydrocarbons and natural gas by well for Plaintiffs and Class Members as reported to the Texas Comptroller or other state or federal agency, to royalty owners by Talisman, as recorded by any third-party vendor contracted by Talisman to test, sample or record such volumes;

    b.   For past and present royalty payments made to Plaintiffs and Class Members on the production of oil, liquids, condensate, liquefied hydrocarbons and natural gas production volumes, and substances; and

c. For past and present deductions by category of expense or other deductions including but not limited to deductions for "shrinkage," and for past and present information supporting any deduction or expense from or to production volumes or royalty payments.

## COUNT 3
## UNJUST ENRICHMENT

72.     Plaintiffs incorporate by reference all preceding paragraphs.  This Count is brought in the alternative.

73.     Talisman has been unjustly enriched as a result of the commingling, improperly allocating, shrinking and underpayment of royalties owed to Plaintiffs and Class Members as described herein.

74.     Plaintiffs and Class Members, in justice and fairness, are entitled to restitution of all underpayments of royalties caused by such wrongful acts and omissions which unjustly enriched Talisman, recovery of reasonable attorneys' fees, recovery of statutory penalties and interest as provided at Tex. Nat. Res. Code §§91.401 - 91.404, punitive damages and any and all other equitable relief deemed appropriate by the court.

## COUNT 4
## DECLARATORY JUDGMENT

75.     Plaintiffs incorporate by reference all preceding paragraphs.

76.     Plaintiffs and Class Members are entitled to a declaratory judgment:  (a) declaring Talisman liable to Plaintiffs and Class Members for the wrongful acts, omissions, practices, and schemes described above, (b) ordering Talisman to provide complete and accurate check stub information, as required by Tex. Nat. Res. Code § 91.502, (c) granting Plaintiffs and Class Members such other or additional declaratory and/or injunctive relief relating to such wrongful acts, omissions, practices, and financial/accounting schemes as may be available under the law

and deemed appropriate by the Court, and/or (f) awarding attorneys' fees as provided for by contract or pursuant to Tex. Nat. Res. Code §91.406, and Tex. Civ. Prac. & Rem. Code 38.001 *et seq.*

## IX. REQUEST FOR RELIEF AND PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all other Class Members, request an award and relief as follows:

a.  An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and undersigned counsel be appointed Class Counsel;

b.  A determination that Talisman breached obligations owed to Plaintiffs and Class Members;

c.  A declaration and Order providing the other declaratory and injunctive relief requested throughout this Complaint;

d.  An Order requiring Talisman to provide an accounting of past and present royalty payments for Plaintiffs and Class Members;

e.  Actual and consequential damages in an amount to be determined at trial;

f.  Applicable statutory penalties for Claims for which they are available;

g.  Punitive damages for Claims for which they are available;

h.  Equitable and/or declaratory relief for Claims for which they are available;

i.  An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre-and post-judgment interest at the highest rate allowed by law;

j.  An order declaring that Talisman is financially responsible for notifying all Class Members of this action; and

k.  Such other and further relief as may be deemed necessary or appropriate.

## X.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:   <u>April 24, 2018</u>                    Respectfully submitted,

/s/ Bryan O. Blevins, Jr.
Bryan O. Blevins, Jr. (TX ADD)
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
490 Park Street
P.O. Box 4905
Beaumont, Texas 77701
Phone: (409) 838-8858
Fax: (409) 813-8610
Email:  BBlevins@provostumphrey.com

W. Michael Hamilton (TN 10720)
**PROVOST★UMPHREY LAW FIRM, L.L.P.**
Hobbs Building, Suite 303
4205 Hillsboro Road
Nashville, TN 37215
Phone: (615) 297-1932
Fax: (615) 297-1986
Email:  MHamilton@provostumphrey.com

T. Ernest Freeman (TX 77056)
Stephen G. Scholl (TX ADD)
**THE FREEMAN LAW FIRM, P.C.**
1770 St. James Place, Suite 120
Houston, Texas 77056
Phone: (713) 973-1000
Fax: (713) 973-1004
Email:  ernest@thefreemanlawfirm.com
steve@thefreemanlawfirm.com

**FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC**
/s/Joseph N. Kravec, Jr.
Joseph N. Kravec, Jr. (PA 68992)
Wyatt A. Lison (PA 90030)
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email:  jkravec@fdpklaw.com
wlison@fdpklaw.com

22

# EXHIBIT A

00092474  OR  945  Pg 452

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Addn&Memo PU 3-13-05
006-191-00F/PF/ds

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

STATE OF TEXAS          §

COUNTY OF KARNES      §

This Agreement, made and entered into on September 20, 2010, by and between WILMA G. REGMUND, Life Tenant, RAYANNE REGMUND CHESSER, Individually and as Remainderman, RAELLEN REGMUND MATTINGLY, Individually and as Remainderman, whose address is 513 Private Road 7474, Kenedy, TX 78119, hereinafter referred to as "Lessor", whether one or more, and ENDURING RESOURCES, LLC, whose address is 475 17th Street, Suite 1500, Denver, CO 80202, hereinafter referred to as "Lessee".

WITNESSETH:

Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

1.00 acre of land, more or less, in the Carlos Martinez Fifteen League, Abstract 6, Karnes County, Texas, being more particularly described in that certain deed dated June 20, 2003, from Raymond Regmund and Wilma G. Regmund to Rayanne Regmund Chesser, recorded in Volume 790, Page 345 of the Official Records of Karnes County, Texas, to which reference is herein made for a more complete description.

The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease.

This Memorandum of Oil, Gas and Mineral Lease ("Memorandum") is subject to the terms and conditions of that certain Lease of even date herewith between the parties hereto which, with all of its terms, covenants and other conditions, is hereby referred to and incorporated herein, the same as if copied in full herein at this point. Included within the terms, provisions and conditions of the Oil, Gas and Mineral Lease is the right of Lessee to obtain subsurface right-of-ways and easements under the surface of and through the subsurface of the leased premises.

The purpose of this Memorandum is to evidence the existence of said Lease and this Memorandum is executed and recorded solely for the purpose of affording notice of the existence of said Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease. This Memorandum is recorded in lieu of filing said Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records and to give notice to all third parties dealing with Lessor and Lessee or with the lands described herein. The Lease and this Memorandum shall be binding upon Lessor and Lessee and their respective heirs, successors, representatives and assigns.

This Memorandum of Oil, Gas and Mineral Lease may be executed as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Agreement. Should less than all of the named Lessors execute this Memorandum, it shall be binding on those who sign.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

LESSOR:


_____
WILMA G. REGMUND, Life Tenant


_____
RAELLEN REGMUND MATTINGLY,
Individually and as Remainderman


_____
RAYANNE REGMUND CHESSER,
Individually and as Remainderman

00092474   Bk   Vol   Pg
            OR   945   453

STATE OF TEXAS          §
COUNTY OF KARNES        §

This instrument was acknowledged before me on this the 29ᵗʰ day of September 2010, by WILMA G. REGMUND, Life Tenant.

RACHEL G. SALINAS
Notary Public, State of Texas
My Commission Exp. 10-24-2010

Rachel H. Salinas
Notary Public, State of Texas
My Commission Expires: 10-24-2010

STATE OF TEXAS          §
COUNTY OF KARNES        §

This instrument was acknowledged before me on this the 29ᵗʰ day of September 2010, by RAYANNE REGMUND CHESSER, Individually and as Remainderman.

RACHEL G. SALINAS
Notary Public, State of Texas
My Commission Exp. 10-24-2010

Rachel H. Salinas
Notary Public, State of Texas
My Commission Expires: 10-24-2010

STATE OF TEXAS          §
COUNTY OF KARNES        §

This instrument was acknowledged before me on this the 3ʳᵈ day of October 2010, by RAELLEN REGMUND MATTINGLEY, Individually and as Remainderman.

RACHEL G. SALINAS
Notary Public, State of Texas
My Commission Exp. 10-24-2010

Rachel H. Salinas
Notary Public, State of Texas
My Commission Expires: 10-24-2010

Filed For Record
Karnes County

On: Oct 19,2010 at 10:12A

As a:
Recording Official Record

Document Number: 00092474
Amount: 20.00

Receipt Number - 31677
By
Marilyn Beddorz

STATE OF TEXAS
COUNTY OF KARNES

I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Karnes County
as stamped hereon by me.
Oct 19,2010

Alva Jonas County Clerk
Karnes County

After filing please return to:
Pamela Schoenberg
P.O. Box 849
Hallettsville, TX 77964

# EXHIBIT B

00134642    OR    1182    579

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

953/001-085-00D, 001-088B-00C/AM/ST

## AMENDMENT TO OIL, GAS AND MINERAL LEASE

STATE OF TEXAS        §
                      §
COUNTY OF KARNES      §

WHEREAS, on the 21st day of June, 2011, **GLORIA F. JANSSEN, individually and as Independent Executrix of the Estate of Wayne A. Janssen,** Deceased as Lessor executed an Oil, Gas and Mineral Lease in favor of **TALISMAN ENERGY USA, INC.** and **STATOIL TEXAS ONSHORE PROPERTIES, LLC,,** as Lessee, covering and describing 4.292 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, recorded by Memorandum of Oil, Gas and Mineral Lease in Volume 996, Page 875 of the Official Records, Karnes County, Texas, and amended to cover 4.35815397 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas in that Amendment of Oil, Gas and Mineral Lease, recorded in Volume 1058, Page 186 of the Official Records, Karnes County, Texas, more particularly described as follows, to wit:

4.35815397 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, consisting of the following eleven (11) tracts:

FIRST TRACT: 0.334 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 11 through 12 in Block 79, of the original Town of Runge Subdivision, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas and being more particularly described in that certain deed dated December 2, 1980, from Edwin Jalufka, Sheriff, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 509, Page 480 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

SECOND TRACT: 0.25 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot Nine (9), Ten (10), Eleven (11) and Twelve (12) in Block Number Seventy-Four (74) of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, LESS AND EXCEPT that certain strip of land within the Right of Way of Highway No. 72, more particularly described in that certain deed dated March 15, 1929, from The Runge Town Company to the County of Karnes and the State of Texas, being more particularly described in that certain deed dated May 8, 1947, from Meta Reuss; Fred T. Mugge and Hilda Mugge, husband and wife; Walter Reiffert; Ralph Reiffert; James M. Reiffert; William H. Reiffert; A. O. Frobese; Alma Frobese; Marion Leonardt, a feme sole; Annie Frobese, a feme sole; all acting through their agent and attorney in fact, R. F. Blackwell to Alf. B. Schroeter, recorded in Volume 167, Page 129 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

THIRD TRACT: 0.321 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 9 and 10 in Block 22 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated March 23, 1984, from Daulton E. Bissett to Wayne Janssen and wife, Gloria Janssen, recorded in Volume 543, Page 309 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

FOURTH TRACT: 0.149 acres of land, more or less, in the Victoriano Zepeda Original

00134642    OR    1182    Pg 580

Grant, Abstract 13, Karnes County, Texas, being all of Lot 3 in Block 2 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Education District and as trustee for the County of Karnes, City of Runge and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FIFTH TRACT:** 0.516 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lots 1, 2, and 3 of Block 90, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178, of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from the Runge Independent School District, to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SIXTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated January 11, 1952, from Lupe Torres and wife, Rosa C. Torres to Estaben Ramirez, recorded in Volume 203, Page 493 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**SEVENTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lot Five (5), in Block Forty-three (43), of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 1 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**EIGHTH TRACT:** 0.527 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated May 18, 1982, from Fred A. Franke and wife, Mildred H. Franke to Wayne A. Janssen and Gloria Janssen, recorded in Volume 527, Page 362 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**NINTH TRACT:** 1.377 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all Lots Nos. 1, 2, 3, 4, 9, 10, 11, and 12 in Block 80, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated April 27, 1976, from Malchen Tips, a feme sole, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 453, Page 260 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description, and;

**TENTH TRACT:** 0.474 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 8, 9 and 10 in Block 888 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated April 2, 1924, from Corinne Taylor Scott, joined by her husband, F. H. Scott to W. T. Box, recorded in Volume 197, Page 90 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description.

**ELEVENTH TRACT:** 0.06615397 acres of land in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being the West 38 feet of Lot 10 in Block 1 of the Town of Runge and a tract 38 feet by 27 ½ feet out of the Northwest corner of Lot 11 in Block 1 of the Town of Runge more particularly described as the tract saved and

excepted in that certain deed dated September 10, 1982, from Wayne A. Janssen and wife, Gloria F. Janssen to Community State Bank, recorded in Volume 530, Page 497 of the Deed Records of Karnes County, Texas.

Additionally, this lease covers and includes any interest owned by Lessor under Rights-of-Way, Easements, streets, roads, culverts and waterways, or alleys abutting, adjoining or adjacent to the above described property.

WHEREAS, it is the desire of GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased, as Lessor and Talisman Energy USA Inc. and Statoil Texas Onshore Properties LLC., as Lessee to extend the primary term of Tract 6 and Tract 10 of said amended Lease from three (3) years to five (5) years from the date of said lease, insofar and only insofar, as it covers that portion of land situated outside the boundaries of the Talisman Energy USA Inc. -- Runge Town Site Gas Unit NO. 1 -- Well No. 1, more fully described in Designation of Gas Unit, recorded in Volume 1021, Page 783 of the Official Records of Karnes County, Texas.

NOW, THEREFORE, for good and valuable consideration in hand paid to the undersigned by TALISMAN ENERGY USA, INC. and STATOIL TEXAS ONSHORE PROPERTIES, LLC, and its assigns, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby amend the Oil, Gas and Mineral Lease by the deletion of the phrase in paragraph "2" of the Lease:

"...this lease shall be for a term of three (3) years from this date..."

And substituting the following phrase in its place:

"...this lease shall be for a term of five (5) years from this date ..."

It is understood and agreed that this instrument is an Amendment of said Lease, insofar and only insofar, as it covers that portion of land situated outside the boundaries of the Talisman Energy USA Inc. -- Runge Town Site Gas Unit NO. 1, which extends the primary term of said Lease and except as amended hereby, the lease shall remain unchanged and the undersigned do hereby adopt, ratify, and confirm the Lease and all of the terms and provisions thereof, as changed, altered and amended hereby; and the undersigned do hereby LEASE, GRANT, LET the above described property covered by the Lease unto Lessee subject to and in accordance with all of the terms and provisions of the Lease as amended hereby and the undersigned do further agree and declare that the Lease is a valid and subsisting oil, gas and mineral lease and is binding on the undersigned in all of its terms and provisions.

This Amendment shall extend to and bind the undersigned and Lessee and their respective heirs, successors, assigns, administrators, executors and legal representatives. The filing of this instrument for record by Lessee or their successors and assigns, shall constitute an acceptance thereof by Lessee or their successors and assigns.

IN WITNESS WHEREOF this instrument is executed on this the 22nd day of _____May_____, 2014 , but effective as of the 21st day of June, 2011.

LESSOR:

_Gloria F. Janssen_
GLORIA F. JANSSEN, Individually
and as Independent Executrix of the
Estate of Wayne A. Janssen, Deceased

ASSIGNEE:

TALISMAN ENERGY USA INC.          STATOIL TEXAS ONSHORE PROPERTIES LLC



_____
~~James Kim, Attorney-in-Fact~~   _FOR_
RYAN HOWRISH
AUTHORIZED PERSON   _lbk_

_____
R. Keith Turner, Authorized Person   _la_

**STATE OF TEXAS**        §
**COUNTY OF KARNES**      §

This instrument was acknowledged before me on this the 22nd day of _May_, 2014, by GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased.

[Notary Seal: CHARLES ALBERT, JR. Notary Public, State of Texas My Commission Expires June 26, 2017]

_Charles Albert_
_____
NOTARY PUBLIC, STATE OF TEXAS

**STATE OF TEXAS**          §
                           §
**COUNTY OF MONTGOMERY**    §

This instrument was acknowledged before me on the 19th day of _JUNE_, 2014, by ~~James Kim, Attorney-in-Fact~~, on behalf of TALISMAN ENERGY USA INC.
RYAN HOWRISH, AUTHORIZED PERSON



[Notary Seal: Sharon Vaught Thompson My Commission Expires 01/20/2016]

_Sharon Vaught Thompson_
_____
NOTARY PUBLIC, STATE OF TEXAS

**STATE OF TEXAS**        §
                         §
**COUNTY OF HARRIS**      §

This instrument was acknowledged before me on the 17th day of _June_, 2014, by R. Keith Turner, Authorized Person on behalf of Statoil Texas Onshore Properties LLC.

[Notary Seal: Kyle Lopez My Commission Expires 01/06/2017]

_Kyle Lopez_
_____
NOTARY PUBLIC, STATE OF TEXAS

After filing please return to
Amanda Miranda
P.O. Box 849
Hallettsville, TX 77964

00134642    Bk    Vol    Pg
            OR    1182   583

Filed for Record in:
Karnes County

On: Jun 20,2014 at 03:01P

As a:
Recording Official Record

Document Number:        00134642

Amount:                   28.00

Receipt Number - 75646
                   By:
            Gabrielle Villarreal

STATE OF TEXAS                    COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
        Karnes County
as stamped hereon by me.
Jun 20,2014


Carol Swize, Karnes County Clerk
Karnes County

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## AMENDMENT TO OIL, GAS AND MINERAL LEASE

THE STATE OF TEXAS     §
                       §
COUNTY OF KARNES       §

WHEREAS, on the 21ˢᵗ day of June, 2011, **GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased,** as Lessor executed Oil, Gas and Mineral lease in favor of **Talisman Energy USA Inc. and Statoil Texas Onshore Properties LLC,** as Lessee, covering and describing 4.292 acres of land, more or less, in the Victoriano Zepeda Grant, Abstract 13, of Karnes County, Texas, as evidence of the Oil, Gas and Mineral Lease recorded in Volume 996, Page 875 of the Official Records of Karnes County, Texas being more particularly described as follows, to wit:

4.292 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, consisting of the following ten (10) tracts:

**FIRST TRACT:** 0.334 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 11 through 12 in Block 79, of the original Town of Runge Subdivision, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas and being more particularly described in that certain deed dated December 2, 1980, from Edwin Jalufka, Sheriff, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 509, Page 480 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SECOND TRACT:** 0.25 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot Nine (9), Ten (10), Eleven (11) and Twelve (12) in Block Number Seventy-Four (74) of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, LESS AND EXCEPT that certain strip of land within the Right of Way of Highway No. 72, more particularly described in that certain deed dated March 15, 1929, from The Runge Town Company to the County of Karnes and the State of Texas, being more particularly described in that certain deed dated May 8, 1947, from Meta Reuss; Fred T. Mugge and Hilda Mugge, husband and wife; Walter Reiffert; Ralph Reiffert; James M. Reiffert; William H. Reiffert; A. O. Frobese; Alma Frobese; Marion Leonardt, a feme sole; Annie Frobese, a feme sole; all acting through their agent and attorney in fact, R. F. Blackwell to Alf. B. Schroeter, recorded in Volume 167, Page 129 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**THIRD TRACT:** 0.321 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 9 and 10 in Block 22 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated March 23, 1984, from Daulton E. Bissett to Wayne Janssen and wife, Gloria Janssen, recorded in Volume 543, Page 309 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FOURTH TRACT:** 0.149 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot 3 in Block 2 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Education District and as trustee for the County of Karnes, City of Runge and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FIFTH TRACT:** 0.516 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lots 1, 2, and 3 of Block 90, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178, of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from the Runge Independent School District, to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SIXTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated January 11, 1952, from Lupe Torres and wife, Rosa C. Torres to Estaben Ramirez, recorded in Volume 203, Page 493 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**SEVENTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lot Five (5), in Block Forty-three (43), of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 1 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**EIGHTH TRACT:** 0.527 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated May 18, 1982, from Fred A. Franke and wife, Mildred H. Franke to Wayne A. Janssen and Gloria Janssen, recorded in Volume 527, Page 362 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**NINTH TRACT:** 1.377 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all Lots Nos. 1, 2, 3, 4, 9, 10, 11, and 12 in Block 80, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated April 27, 1976, from Malchen Tips, a feme sole, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 453, Page 260 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description, and;

**TENTH TRACT:** 0.474 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 8, 9 and 10 in Block 86B of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated April 2, 1924, from

Corinne Taylor Scott, joined by her husband, F. H. Scott to W. T. Box, recorded in Volume 197, Page 90 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description.

WHEREAS, the parties to said lease now desire to amend the same as hereinafter set forth;

NOW, THEREFORE, for good and valuable consideration in hand paid to the undersigned by Talisman Energy USA Inc. and Statoil Texas Onshore Properties LLC, and its assigns, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby amend the above described Oil, Gas, and Mineral Lease and Memorandum of Oil, Gas and Mineral Lease by correcting the description to state as follows:

4.35815397 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, consisting of the following eleven (11) tracts:

FIRST TRACT: 0.334 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 11 through 12 in Block 79, of the original Town of Runge Subdivision, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas and being more particularly described in that certain deed dated December 2, 1980, from Edwin Jalufka, Sheriff, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 509, Page 480 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

SECOND TRACT: 0.25 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot Nine (9), Ten (10), Eleven (11) and Twelve (12) in Block Number Seventy-Four (74) of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, LESS AND EXCEPT that certain strip of land within the Right of Way of Highway No. 72, more particularly described in that certain deed dated March 15, 1929, from The Runge Town Company to the County of Karnes and the State of Texas, being more particularly described in that certain deed dated May 8, 1947, from Meta Reuss; Fred T. Mugge and Hilda Mugge, husband and wife; Walter Reiffert; Ralph Reiffert; James M. Reiffert; William H. Reiffert; A. O. Frobese; Alma Frobese; Marion Leonardt, a feme sole; Annie Frobese, a feme sole; all acting through their agent and attorney in fact, R. F. Blackwell to Alf. B. Schroeter, recorded in Volume 167, Page 129 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

THIRD TRACT: 0.321 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 9 and 10 in Block 22 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated March 23, 1984, from Daulton E. Bissett to Wayne Janssen and wife, Gloria Janssen, recorded in Volume 543, Page 309 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

FOURTH TRACT: 0.149 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot 3 in Block 2 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Education District and as trustee for the County of Karnes, City of Runge and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FIFTH TRACT:** 0.516 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lots 1, 2, and 3 of Block 90, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178, of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from the Runge Independent School District, to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SIXTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated January 11, 1952, from Lupe Torres and wife, Rosa C. Torres to Estaben Ramirez, recorded in Volume 203, Page 493 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**SEVENTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lot Five (5), in Block Forty-three (43), of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 1 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**EIGHTH TRACT:** 0.527 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated May 18, 1982, from Fred A. Franke and wife, Mildred H. Franke to Wayne A. Janssen and Gloria Janssen, recorded in Volume 527, Page 362 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**NINTH TRACT:** 1.377 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all Lots Nos. 1, 2, 3, 4, 9, 10, 11, and 12 in Block 80, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated April 27, 1976, from Malchen Tips, a feme sole, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 453, Page 260 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description, and;

**TENTH TRACT:** 0.474 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 8, 9 and 10 in Block 86B of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated April 2, 1924, from Corinne Taylor Scott, joined by her husband, F. H. Scott to W. T. Box, recorded in Volume 197, Page 90 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description.

**ELEVENTH TRACT:** 0.06615397 acres of land in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being the West 38 feet of Lot 10 in Block 1 of the Town of Runge and a tract 38 feet by 27 ½ feet out of the Northwest corner of Lot 11 in Block 1 of the Town of Runge more particularly described as the tract saved and excepted in that certain deed dated September 10, 1982, from Wayne A. Janssen and wife, Gloria F. Janssen to Community State Bank, recorded in Volume 530, Page 497 of the Deed Records of Karnes County, Texas.

**EXCEPT AS AMENDED HEREBY**, the lease shall remain unchanged and the undersigned do hereby adopt, ratify, and confirm the Lease and all of the terms and provisions thereof, as changed, altered and amended hereby; and the undersigned do hereby LEASE, GRANT, and LET the above described property covered by the Lease unto Lessee subject to and in accordance with all of the terms and provisions of the Lease as amended hereby and the undersigned do further agree and declare that the Lease is a valid and subsisting oil, gas and mineral lease and is binding on the undersigned in all of its terms and provisions.

This Amendment shall extend to and bind the undersigned and Lessee and their respective heirs, successors, assigns, administrators, executors and legal representatives. The filing of this instrument for record by Lessee or their successors and assigns, shall constitute and acceptance thereof by Lessee or their successors and assigns.

IN WITNESS WHEREOF this instrument is executed on this the 17th day of May, 2012, but effective as of the 21st day of June, 2011.

**GLORIA F. JANSSEN, Individually and as**
**Independent Executrix of the Estate of**
**Wayne A. Janssen, Deceased**


**STATE OF TEXAS**              §

**COUNTY OF KARNES**          §


This instrument was acknowledged before me on this the 17th day of May, 2012, by **GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased.**

KEVIN W. HAAS
My Commission Expires
August 28, 2014

Notary Public, State of Texas
My Commission Expires: 8/28/2014



Filed for Record in:
Karnes County

On: Jun 27,2012  at  01:29P

As a:
Recording in Official Record

Document Number:        00112639
Amount:                      32.00

Receipt Number - 56205
By,
Cecelia Valdes

STATE OF TEXAS
COUNTY OF KARNES
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Karnes County
as stamped hereon by me.
Jun 27,2012

Carol Switzer County Clerk
Karnes County

After filing please return to
Amanda Miranda
P.O. Box 849
Helizville, TX 77944

00102150  Bk OR  Vol 996  Pg 875

Adod&Not-PU 02/01/04
123/1-80-A, 1-86B-C, 1-43-C, etc/DH, bg

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

STATE OF TEXAS      §
COUNTY OF KARNES   §

This Agreement, made and entered into on June 21, 2011, by and between **GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate Wayne A. Janssen, Deceased** , whose address is 1786 South FM 81, Runge, TX 78151, hereinafter referred to as "Lessor", whether one or more, and **Talisman Energy USA, Inc.**, whose address is 4 Waterway Square, Suite 600, The Woodlands, TX 77380 and **Statoil Texas Onshore Properties LLC**, whose address is 2101 City West Boulevard, Building 4, 8th Floor, Houston, TX 77042, hereinafter referred to as "Lessee".

### WITNESSETH:

Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

### DESCRIPTION:

4.292 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, consisting of the following ten (10) tracts:

**FIRST TRACT:** 0.334 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 11 through 12 in Block 79, of the original Town of Runge Subdivision, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas and being more particularly described in that certain deed dated December 2, 1980, from Edwin Jalufka, Sheriff, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 509, Page 480 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SECOND TRACT:** 0.25 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot Nine (9), Ten (10), Eleven (11) and Twelve (12) in Block Number Seventy-Four (74) of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, LESS AND EXCEPT that certain strip of land within the Right of Way of Highway No. 72, more particularly described in that certain deed dated March 15, 1929, from The Runge Town Company to the County of Karnes and the State of Texas, being more particularly described in that certain deed dated May 8, 1947, from Meta Reuss; Fred T. Mugge and Hilda Mugge, husband and wife; Walter Reiffert; Ralph Reiffert; James M. Reiffert; William H. Reiffert; A. O. Frobese; Alma Frobese; Marion Leonardt, a feme sole; Annie Frobese, a feme sole; all acting through their agent and attorney in fact, R. F. Blackwell to Alf. B. Schroeter, recorded in Volume 167, Page 129 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**THIRD TRACT:** 0.321 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 9 and 10 in Block 22 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated March 23, 1984, from Daulton E. Bissett to Wayne Janssen and wife, Gloria Janssen, recorded in Volume 543, Page 309 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FOURTH TRACT:** 0.149 acres of land, mor or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lot 3 in Block 2 of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Education District and as trustee for the County of Karnes, City of Runge and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**FIFTH TRACT:** 0.516 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lots 1, 2, and 3 of Block 90, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178, of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated September 15, 2003, from the Runge Independent School District, to Wayne Janssen, recorded in Volume 794, Page 164 of the

Adod&Not-PU 02/01/04
123/1-80-A, 1-86B-C, 1-43-C, etc/DH, bg

Official Deed Records of Karnes County, Texas, to which references are herein made for a more complete description;

**SIXTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated January 11, 1982, from Lupe Torres and wife, Rosa C. Torres to Estaben Ramirez, recorded in Volume 203, Page 493 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**SEVENTH TRACT:** 0.172 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being Lot Five (5), in Block Forty-three (43), of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 1 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated September 15, 2003, from Runge Independent School District for itself and Karnes County Hospital District to Wayne Janssen, recorded in Volume 794, Page 164 of the Official Records of Karnes County, Texas, to which references are herein made for a more complete description;

**EIGHTH TRACT:** 0.527 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being more particularly described in that certain deed dated May 18, 1982, from Fred A. Franke and wife, Mildred H. Franke to Wayne A. Janssen and Gloria Janssen, recorded in Volume 527, Page 362 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description;

**NINTH TRACT:** 1.377 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all Lots Nos. 1, 2, 3, 4, 9, 10, 11, and 12 in Block 86, of the Town of Runge as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, and being more particularly described in that certain deed dated April 27, 1976, from Malchan Tips, a feme sole, to Wayne A. Janssen and wife, Gloria Janssen, recorded in Volume 453, Page 260 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description, and;

**TENTH TRACT:** 0.474 acres of land, more or less, in the Victoriano Zepeda Original Grant, Abstract 13, Karnes County, Texas, being all of Lots 8, 9 and 10 in Block 86B of the Town of Runge, as shown by the map or plat of said town, recorded in Volume A, Page 178 of the Plat Records of Karnes County, Texas, being more particularly described in that certain deed dated April 2, 1924, from Corinne Taylor Scott, joined by her husband, F. H. Scott to W. T. Box, recorded in Volume 197, Page 90 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description.

The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease. This instrument is executed and recorded solely for the purpose of affording notice of the existence of such Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease.

The purpose of this Memorandum is to evidence the existence of said Oil, Gas and Mineral Lease and this Memorandum is recorded in lieu of filing said Oil, Gas and Mineral Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records. The Oil, Gas and Mineral Lease and this Memorandum of Oil, Gas and Mineral Lease shall be binding upon Lessor and their respective heirs, successors, representatives and assigns.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

LESSOR:

_Gloria F. Janssen_

GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased

10203\00000\00150686-J

00102150   Bk  Vol  Pg
          OR   996  877

Adod&Not-PU 02/01/04
123/1-80-A, 1-86B-C, 1-45-C, etc/DH, bg

## ACKNOWLEDGMENT

STATE OF TEXAS          §
COUNTY OF KARNES        §

This instrument was acknowledged before me on this the _6th_ day of _July_, 2011, by GLORIA F. JANSSEN, Individually and as Independent Executrix of the Estate of Wayne A. Janssen, Deceased

Notary Public, State of Texas
My Commission Expires: _____

DAVID C. HAIRELL
Notary Public, State of Texas
My Commission Expires
February 23, 2013

Filed for Record in:
Karnes County

On: Aug 25,2011 at 11:21A

As a:
Recording Official Record

Document Number:      00102150

Amount:                  24.00

Receipt Number - 42714
By:
Janie Gonzales

STATE OF TEXAS            COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
    Karnes County
as stamped hereon by me.
Aug 25,2011

Carol Swize, County Clerk
Karnes County

102030000000150686-1
NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE
OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS
FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR
DRIVER'S LICENSE NUMBER.

After filing please return to
Amanda Miranda
P.O. Box 849
Hallettsville, TX 77964

# EXHIBIT C

00076929 Bk OR Vol 864 Pg 307

Adod&Not-PU 02/01/04
854/006-001-M13/RG, bg

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

STATE OF TEXAS      §
COUNTY OF KARNES    §

     This Agreement, made and entered into on June 1, 2007, by and between **MICHAEL J. NEWBERRY** and wife, **CAROL A. NEWBERRY**, whose address is 2838 County Road 138, Kenedy, TX 78119, hereinafter referred to as "Lessor", whether one or more, and **ENDURING RESOURCES, LLC**, whose address is 475 17th Street, Suite 1500, Denver, CO 80202, hereinafter referred to as "Lessee".

### WITNESSETH:

     Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

### DESCRIPTION:

29.90 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas, being all that certain 34.90 acres of land, more particularly described in that certain deed dated January 31, 1950, from Mrs. Eulalia Tullis Turner, et al to Wade Newberry, recorded in Volume 190, Page 408 of the Deed Records of Karnes County, Texas, LESS AND EXCEPT that certain 5.00 acres of land, more or less, more particularly described in that certain deed dated August 1, 1987, from Wade C. Newberry, by his Attorney-in-Fact, Lydia A. Newberrry and wife, Lydia A. Newberry to Dollie E. Vickery, recorded in Volume 574, Page 393 of the Deed Records of Karnes County, Texas, to which references are herein made for a more complete description.

     The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease. This instrument is executed and recorded solely for the purpose of affording notice of the existence of such Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease.

     The purpose of this Memorandum is to evidence the existence of said Oil, Gas and Mineral Lease and this Memorandum is recorded in lieu of filing said Oil, Gas and Mineral Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records. The Oil, Gas and Mineral Lease and this Memorandum of Oil, Gas and Mineral Lease shall be binding upon Lessor and their respective heirs, successors, representatives and assigns.

     **IN WITNESS WHEREOF,** this instrument is executed on the date first above written.

LESSOR:


_Michael J. Newberry_
MICHAEL J. NEWBERRY

_Carol A. Newberry_
CAROL A. NEWBERRY

### ACKNOWLEDGMENT

STATE OF TEXAS      §
COUNTY OF _Karnes_    §

     This instrument was acknowledged before me on this the **6** day of **June**, 2007, by **MICHAEL J. NEWBERRY.**

_Matt David Harell_
Notary Public, State of Texas
My Commission Expires: **Nov. 2, 2009**

MATT DAVID HARELL
MY COMMISSION EXPIRES
November 2, 2009

00076929   Bk   Vol   Pg
           OR   864   308

Adod&Not-PU 02/01/04
854/006-001-M13/RG, bg

### ACKNOWLEDGMENT

STATE OF TEXAS            §
COUNTY OF _Karnes_        §

This instrument was acknowledged before me on this the 6 day of June, 2007, by
CAROL A. NEWBERRY.

[Notary seal: MATT DAVID HARRELL / MY COMMISSION EXPIRES / November 2, 2009]

_Matt David Harrell_
Notary Public, State of Texas
My Commission Expires: nov. 2, 2006

Filed for Record in:
Karnes County

On: Oct 15,2007 at 04:36P

As a:
Record as Official Record

Document Number:      00076929

Amount :              20.00

Receipt Number - 13938
By:
Marilyn Bednorz

STATE OF TEXAS            COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
    Karnes County
as stamped hereon by me.
Oct 15,2007

Honorable Alva Jonas, County Clerk
Karnes County

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE
OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS
FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR
DRIVER'S LICENSE NUMBER.

After filing please return to
Pamela Schoenberg
P.O. Box 849
Hallettsville, TX 77964

00080455  Bk  Vol  Pg
          OR  884  404

A6o6&Not-PU 02/01/04
854/006-001-M06/RG, bg

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

STATE OF TEXAS        §
COUNTY OF KARNES      §

    This Agreement, made and entered into on June 1, 2007, but effective as of _____ day of _____, _____, the date that the Sam A. May Unit is dissolved, by and between **MICHAEL J. NEWBERRY and wife, CAROL A. NEWBERRY**, whose address is 2838 County Road 138, Kenedy, TX 78119, hereinafter referred to as "Lessor", whether one or more, and **ALLAN EXPLORATION**, whose address is P. O. Box 5047, Katy, TX 77491-5047, hereinafter referred to as "Lessee".

### WITNESSETH:

    Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

### DESCRIPTION:

    32.60 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas, being more particularly described in that certain deed dated July 8, 1981, from Billy H. Rix and wife, Charlotte Rix to Harvey L. Turnipseed and wife, Virginia Nell Turnipseed, recorded in Volume 517, Page 970 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description.

    The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease. This instrument is executed and recorded solely for the purpose of affording notice of the existence of such Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease.

    The purpose of this Memorandum is to evidence the existence of said Oil, Gas and Mineral Lease and this Memorandum is recorded in lieu of filing said Oil, Gas and Mineral Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records. The Oil, Gas and Mineral Lease and this Memorandum of Oil, Gas and Mineral Lease shall be binding upon Lessor and their respective heirs, successors, representatives and assigns.

    IN WITNESS WHEREOF, this instrument is executed on the date first above written.

**LESSOR:**

_____          _____
MICHAEL J. NEWBERRY                 CAROL A. NEWBERRY

### ACKNOWLEDGMENT

STATE OF TEXAS        §
COUNTY OF _Karnes_    §

    This instrument was acknowledged before me on this the _6_ day of _June_, 2007, by **MICHAEL J. NEWBERRY**.

MATT DAVID HAIRELL
MY COMMISSION EXPIRES
November 2, 2009

_____
Notary Public, State of Texas
My Commission Expires: _nov. 2, 2009_

BK Vol Pg
00080655 OR 884 405

Adod&Net-PU 02/01/04
854/006-001-M06/RG, bg

## ACKNOWLEDGMENT

STATE OF TEXAS §
COUNTY OF Karnes §

This instrument was acknowledged before me on this the 6 day of June, 2007, by CAROL A. NEWBERRY.

MATT DAVID HARRELL
MY COMMISSION EXPIRES
November 2, 2009

*Matt David Harrell*
Notary Public, State of Texas
My Commission Expires: nov. 2, 2009

Filed for Record in:
Karnes County

On: Oct 01,2008 at 09:52A

As an :
Recording Official Record

Document Number: 00080655

Amount: 20.00

Receipt Number - 12513
By:
Erica Gutierrez

STATE OF TEXAS          COUNTY OF KARNES
   I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
   Karnes County
as stamped hereon by me.
Oct 01,2008

Alva Jones, County Clerk
Karnes County

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

After filing please return to
Pamela Schoenberg
P.O. Box 849
Hallettsville, TX 77964

00119818    Bk    Vol    Pg
                        OR    1099   854

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## REVIVOR EXTENSION OF OIL, GAS AND MINERAL LEASE

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL BY THESE PRESENTS: |
| COUNTY OF KARNES | § | |

LESSOR:    MICHAEL J. NEWBERRY and wife, CAROL A. NEWBERRY
2838 County Road 138, Kenedy, TX 78119

ORIGINAL LESSEE/
ASSIGNOR:    ENDURING RESOURCES, LLC
475 17th Street, Suite 1500, Denver, CO 80202

ASSIGNEE:    TALISMAN ENERGY USA INC.
4 Waterway Square Place, Suite 600, The Woodlands, Texas 77380

STATOIL TEXAS ONSHORE PROPERTIES LLC
2101 City West Boulevard, Suite 800, Houston, Texas 77042

DATE OF LEASE:    September 16, 2009

RECORDING INFORMATION:    Volume 908, pages 285, Official Records of Karnes County, Texas

LEASED PREMISES:
**32.60 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas, being more particularly described in that certain deed dated July 8, 1981, from Billy H. Rix and wife, Charlott Rix to Harvey L. Turnipseed and wife, Virginia Nell Turnipseed, recorded in Volume 517, Page 970 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description.**

WHEREAS, the Oil, Gas and Mineral Lease described above (the "Lease") terminated pursuant to its own terms and Lessor and Assignee desire to revive the Lease and extend the term of the Lease.

NOW, THEREFORE, the undersigned Lessor, whether one or more, for and in consideration of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged GRANTS, LEASES and LETS the lands covered under the Lease to Assignee, and furthermore, does hereby agree that the Lease is hereby revived, adopted, ratified and confirmed and the undersigned recognizes the full validity of same and that the original term of said lease be and is hereby extended three (3) additional years from the expiration date of the lease, with the same force and effect as if such extended term had been originally expressed in such Lease, subject, however, in all other respects, to the provisions and conditions of said Lease as originally executed.

NOW, THEREFORE, the undersigned Lessor, whether one or more, for and in consideration of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged GRANTS, LEASES and LETS the lands covered under the Lease

to Assignee, and furthermore, does hereby agree to insert the following phrase in the Addendum of the Lease:

18. If Lessee drills a well on the leased premises, Lessee shall pay to the Lessor the sum of $10,000.00 as payment for surface damages based upon usage by the Lessee of not more than four (4) acres including the right of ingress and egress of said land. It further being understood this does not preclude the Lessee for being liable for additional damages to the Lessor. If value of such damages exceeds $10,000.00 or Lessee is using more than four (4) acres including the right of ingress and egress for its operations, any additional acre(s) used by the Lessee shall accrue damages to the Lessor which shall be calculated on the basis of $4,000.00 per acre. None of these damages included in the location damages provision shall include damages resulting from laying a pipeline, such damages would be addition to such payment.

This Revivor Extension shall extend to and bind the undersigned and their respective heirs, successors, assigns, administrators, executors and legal representatives. The filing of this instrument for record by Lessee or their successors and assigns, shall constitute and acceptance thereof by Lessee or their successor and assigns.

IN WITNESS WHEREOF, this instrument is executed on this 7TH day of ~~October,~~ *November* 2012.

### LESSORS

_____        _____
**MICHAEL J. NEWBERRY**                 **CAROL A. NEWBERRY**

### LESSEES

**TALISMAN ENERGY USA INC.**            **STATOIL TEXAS ONSHORE PROPERTIES LLC**

By: _____            By: _____
    Darin A. Zanovich
    Attorney-In-Fact

Title: _____ *dk*          Title: __R. Keith Turner - Land Mgr.__
                                              **Authorized Person**


**STATE OF TEXAS**        §
                          §
**COUNTY OF KARNES**      §

This instrument was acknowledged before me on this the 7TH day of ~~October,~~ *November* 2012, by **MICHAEL J. NEWBERRY.**

_____
Notary Public, State of Texas
My Commission Expires: _8/28/14_

KEVIN W. HAAS
My Commission Expires
August 28, 2014

DO119818    BK    Vol    Pg
                OR    1099    856

STATE OF TEXAS          §
                        §
COUNTY OF KARNES        §

This instrument was acknowledged before me on this the 7th day of ~~October~~ November, 2012, by
**CAROL A. NEWBERRY.**

[Notary seal: KEVIN W. HAAS, My Commission Expires August 28, 2014]

Notary Public, State of Texas
My Commission Expires: 8/28/14

---

STATE OF TEXAS          §
                        §
COUNTY OF MONTGOMERY    §

The foregoing instrument was acknowledged before me this the 11th day of
January, 2013, by Davis A. Zanovich, Attorney In-Fact, on behalf
of **Talisman Energy USA INC.**

[Notary seal: KATHLEEN F. DENZER, NOTARY PUBLIC STATE OF TEXAS, COMMISSION EXPIRES 04-11-2015]

Notary Public, State of Texas
My Commission Expires: 4-11-2015

---

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

The foregoing instrument was acknowledged before me this the 14th day of
January, 2013, by B.Keith Turner, Authorized Person on behalf of
**Statoil Texas Onshore Properties LLC.**

Notary Public, State of Texas
My Commission Expires: 1/5/2017

[Notary seal: Kyle Lopez, My Commission Expires 01/05/2017]

Page 3 of 3

After filing please return to
Amanda Miranda
P.O. Box 849
Hallettsville, TX 77964

Bk        Vol      Pg
00119818    OR      1099     857

Filed for Record in:
Karnes County

On: Feb 08,2013 at 09:20A

As a:
Recording Official Record

Document Number:        00119818

Amount:              24.00

Receipt Number - 63144
By:
Vanessa Villanueva

STATE OF TEXAS            COUNTY OF KARNES
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Karnes County
as stamped hereon by me.
Feb 08,2013

Carol Swize, Karnes County Clerk
Karnes County

00076928    Bk    Vol    Pg
OR    864    305

Adod&Not-PU 02/01/04
854/006-001-M05/RG, bg

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

STATE OF TEXAS          §
COUNTY OF KARNES          §

This Agreement, made and entered into on June 1, 2007, by and between **MICHAEL J. NEWBERRY, dealing in his sole and separate property**, whose address is 2838 County Road 138, Kenedy, TX 78119, hereinafter referred to as "Lessor", whether one or more, and **ENDURING RESOURCES, LLC**, whose address is 475 17th Street, Suite 1500, Denver, CO 80202, hereinafter referred to as "Lessee".

### WITNESSETH:

Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

### DESCRIPTION:

**28.80 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas**, being more particularly described in that certain deed dated January 1, 1997, from Dorothy Samsel, formerly known as Dorothy Samsel Newberry Richard and Dorothy Samsel Newberry, a feme sole to Michael J. Newberry and Rebecca Newberry Landry, recorded in Volume 694, Page 476 of the Official Records of Karnes County, Texas, to which reference is herein made for a more complete description.

The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease. This instrument is executed and recorded solely for the purpose of affording notice of the existence of such Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease.

The purpose of this Memorandum is to evidence the existence of said Oil, Gas and Mineral Lease and this Memorandum is recorded in lieu of filing said Oil, Gas and Mineral Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records. The Oil, Gas and Mineral Lease and this Memorandum of Oil, Gas and Mineral Lease shall be binding upon Lessor and their respective heirs, successors, representatives and assigns.

**IN WITNESS WHEREOF**, this instrument is executed on the date first above written.

**LESSOR:**

_Michael J. Newberry_
MICHAEL J. NEWBERRY, dealing in his sole
and separate property

### ACKNOWLEDGMENT

STATE OF TEXAS          §
COUNTY OF _Karnes_          §

This instrument was acknowledged before me on this the _6_ day of _June_, 2007, by **MICHAEL J. NEWBERRY, dealing in his sole and separate property.**

_Matt David Harell_
Notary Public, State of Texas
My Commission Expires: _Nov. 2, 2009_

MATT DAVID HARELL
MY COMMISSION EXPIRES
November 2, 2009

After filing please return to
Pamela Schoeneberg
P.O. Box 849
Hallettsville, TX 77964

00076928 Bk OR Vol 864 Pg 506

Filed for Record in:
Karnes County

On: Oct 15,2007 at 04:36P

As a:
Recording Official Record

Document Number: 00076928

Amount: 16.00

Receipt Number - 13938
By,
Marilyn Bednorz

STATE OF TEXAS          COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
    Karnes County
as stamped hereon by me.
Oct 15,2007

Honorable Alva Jonas, County Clerk
Karnes County

33⁷/6-1-m05

00120200    BK    Vol    Pg
            OR    1102   133

> **NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### REVIVOR EXTENSION OF OIL, GAS AND MINERAL LEASE

STATE OF TEXAS     §

                    §     KNOW ALL BY THESE PRESENTS:

COUNTY OF KARNES   §

LESSOR:          DOROTHY DAVIDSON, a married woman, dealing in her sole and separate property
                  13065 FM 1144, Karnes City, TX 78118

ORIGINAL LESSEE/
ASSIGNOR:       ENDURING RESOURCES, LLC
                  475 17ᵗʰ Street, Suite.1500, Denver, CO 80202

ASSIGNEE:       TALISMAN ENERGY USA INC.
                  4 Waterway Square Place, Suite 600, The Woodlands, Texas 77380

                  STATOIL TEXAS ONSHORE PROPERTIES LLC
                  2101 City West Boulevard, Suite 800, Houston, Texas 77042

DATE OF LEASE:   September 16, 2009

RECORDING INFORMATION:     Volume 908, pages 287, Official Records of Karnes County, Texas

LEASED PREMISES:
**28.80 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas, being more particularly described in that certain deed dated January 1, 1997, from Dorothy Samsel, formerly known as Dorothy Samsel Newberry Richard and Dorothy Samsel Newberry, a feme sole, to Michael J. Newberry and Rebecca Newberry Landry, recorded in Volume 694, Page 476 of the Official Records of Karnes County, Texas, to which reference is herein made for a more complete description.**

WHEREAS, per Affidavit of Heirship for Dorothy Lydia Samsel Davidson, recorded in Volume 978, Page 742 of Official Records of Karnes County, Texas, Dorothy Lydia Samsel Davison died December 23, 2010 intestate with Leonard Scott Davidson, surviving husband, Michael J. Newberry and Rebecca Newberry, surviving children, as her only heirs.

WHEREAS, per Mineral Warranty Deed in Volume 978, Page 744 of Official Records in Karnes County, Texas, Leonard Scott Davidson has conveyed the above described acreage to Michael J. Newberry and Rebecca Newberry.

WHEREAS, the Oil, Gas and Mineral Lease described above (the "Lease") terminated pursuant to its own terms and Lessor and Assignee desire to revive the Lease and extend the term of the Lease.

NOW, THEREFORE, the undersigned Lessor, whether one or more, for and in consideration of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged GRANTS, LEASES and LETS the lands covered under the Lease to Assignee, and furthermore, does hereby agree that the Lease is hereby revived, adopted, ratified and confirmed and the undersigned recognizes the full validity of same and that the original term of said lease be and is hereby extended three (3) additional years from the expiration date of the lease, with the same force and effect as if such extended term had been originally expressed in such Lease, subject, however, in all other respects, to the provisions and conditions of said Lease as originally executed.

NOW, THEREFORE, the undersigned Lessor, whether one or more, for and in consideration of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged GRANTS, LEASES and LETS the lands covered under the Lease to Assignee, and furthermore, does hereby agree to insert the following phrase in the Addendum of the Lease:

18. If Lessee drills a well on the leased premises, Lessee shall pay to the Lessor the sum of $15,000.00 as payment for surface damages based upon usage by the Lessee of not more than four (4) acres including the right of ingress and egress of said land. It further being understood this does not preclude the Lessee for being liable for additional damages to the Lessor. If value of such damages exceeds $15,000.00 or Lessee is using more than four (4) acres including the right of ingress and egress for its operations, any additional acre(s) used by the Lessee shall accrue damages to the Lessor which shall be calculated on the basis of $4,000.00 per acre. None of these damages included in the location damages provision shall include damages resulting from laying a pipeline, such damages would be addition to such payment.

This Revivor Extension of the Oil, Gas and Mineral Lease may be executed as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Agreement. Should less than all of the named Lessors execute this Revivor Extension of the Oil, Gas and Mineral Lease, it shall be binding on those who sign.

IN WITNESS WHEREOF, this instrument is executed on this ___7^TH___ day of ~~October~~ *November*, 2012.

LESSORS

_Michael J. Newberry_
MICHAEL J. NEWBERRY, a married man, dealing in his sole and separate property

_Rebecca Newberry_
REBECCA NEWBERRY, a single woman, dealing in her sole and separate property

LESSEES

TALISMAN ENERGY USA INC.

By: _____
    Darin A. Zanovich
    Attorney-In-Fact          CH

Title: _____

STATOIL TEXAS ONSHORE PROPERTIES LLC

By: _____
    R. Keith Turner - Land Mgr.

Title: ___Authorized Person___

Page 2 of 4

00120200  Bk  Vol  Pg
          OR  1102  135

STATE OF TEXAS           §
                         §
COUNTY OF KARNES         §

This instrument was acknowledged before me on this the ___7TH___ day of October, *November* 2012, by **MICHAEL J. NEWBERRY, a married man, dealing in his sole and separate property.**



KEVIN W. HAAS
My Commission Expires
August 28, 2014

_____
Notary Public, State of Texas
My Commission Expires: 8/28/204

STATE OF ~~TEXAS~~ *ARKANSAS*     §
                                  §
COUNTY OF ~~KARNES~~ *PULASKI*    §

This instrument was acknowledged before me on this the ___3th___ day of October, *November* 2012, by **REBECCA NEWBERRY, a single woman, dealing in her sole and separate property.**

JANA MARIE HERRINGTON
PULASKI COUNTY,
NOTARY PUBLIC - ARKANSAS
My Commission Expires November 25, 2018
Commission No. 12399000

_____
Notary Public, State of ~~Texas~~ ARKANSAS
My Commission Expires: 11/25/18

STATE OF TEXAS           §
                         §
COUNTY OF MONTGOMERY     §

The foregoing instrument was acknowledged before me this the ___11th___ day of _January_ 20_13_ by _Darin Zarovich_ _Attorney -In-Fact_ on behalf of Talisman Energy USA INC.

KATHLEEN F. DENZER
NOTARY PUBLIC STATE OF TEXAS
MY COMMISSION EXPIRES
04-11-2015

_____
Notary Public, State of Texas
My Commission Expires: 4-11-2015

00120200    Bk    Vol    Pg
               OR    1102   136

**STATE OF TEXAS**    §

                     §

**COUNTY OF HARRIS**   §

    The foregoing instrument was acknowledged before me this the _14th_ day of _January_, 2013, by _R. Keith Turner_, _Authorized Atty._ on behalf of **Statoil Texas Onshore Properties LLC.**



Notary Public, State of Texas

My Commission Expires: _1/5/2017_

Kyle Lopez
My Commission Expires
01/05/2017

Filed for Record in:
    Karnes County

On: Feb 25,2013 at 01:24P

As a:
Recording Official Record

Document Number:    00120200

Amount:             28.00

    Receipt Number - 63638
        By:
    Vanessa Villanueva

STATE OF TEXAS        COUNTY OF KARNES
    I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of:
    Karnes County
as stamped hereon by me.
Feb 25,2013

Carol Swize, Karnes County Clerk
Karnes County

After filing please return to
Amanda Miranda
P.O. Box 849
Hallettsville, TX 77964

00076930   BK   VOL   PG
                 OR    864   309

Adod&Not-PU 02/01/04
854/006-001-M15/RG, bg

## MEMORANDUM OF
## OIL, GAS AND MINERAL LEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF KARNES | § |

This Agreement, made and entered into on June 1, 2007, by and between **MICHAEL J. NEWBERRY** and wife, **CAROL A. NEWBERRY**, whose address is 2838 County Road 138, Kenedy, TX 78119, hereinafter referred to as "Lessor", whether one or more, and **ENDURING RESOURCES, LLC**, whose address is 475 17th Street, Suite 1500, Denver, CO 80202, hereinafter referred to as "Lessee".

### WITNESSETH:

Lessor and Lessee have this day entered into an Oil, Gas and Mineral Lease ("Lease") covering the following described lands located in Karnes County, Texas (the "lands"), to wit:

### DESCRIPTION:

**32.00 acres of land, more or less, in the Carlos Martinez Fifteen League Grant, Abstract 6, Karnes County, Texas,** being more particularly described in that certain deed dated December 3, 1965, from L. O. Little and wife, Rae I. Little to Wade C. Newberry and Lydia Newberry, recorded in Volume 343, Page 5 of the Deed Records of Karnes County, Texas, to which reference is herein made for a more complete description.

The Oil, Gas and Mineral Lease has a primary term of three (3) years from the effective date of said Lease, and shall continue as long thereafter as oil or gas is produced in paying quantities from the Leased Premises or land pooled therewith, or said lease is otherwise maintained, all as more particularly set out in said Oil, Gas and Mineral Lease of even date herewith to which reference is hereby made for all purposes including further description of the terms, provisions and conditions of said Lease. This instrument is executed and recorded solely for the purpose of affording notice of the existence of such Lease and shall not amend, alter or otherwise affect the terms, provisions and conditions of said Lease.

The purpose of this Memorandum is to evidence the existence of said Oil, Gas and Mineral Lease and this Memorandum is recorded in lieu of filing said Oil, Gas and Mineral Lease for record in the Official Records of Karnes County, Texas, so as to avoid unduly encumbering such records. The Oil, Gas and Mineral Lease and this Memorandum of Oil, Gas and Mineral Lease shall be binding upon Lessor and their respective heirs, successors, representatives and assigns.

**IN WITNESS WHEREOF,** this instrument is executed on the date first above written.

LESSOR:

_Michael J. Newberry_
MICHAEL J. NEWBERRY

_Carol A. Newberry_
CAROL A. NEWBERRY

### ACKNOWLEDGMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF VICTORIA | § |

This instrument was acknowledged before me on this the __7__ day of __June__, 2007, by MICHAEL J. NEWBERRY.

KEVIN W. HAAS
Notary Public
STATE OF TEXAS
My Commission
Expires 08/28/2010

_Kevin Haas_
Notary Public, State of Texas
My Commission Expires: __8/28/10__

00076930    BK    VOL    Pg
            OR     864    310

Adod&Not-PU 02/01/04
854/006-001-MIS/RO, bg

ACKNOWLEDGMENT

STATE OF TEXAS           §
COUNTY OF VICTORIA       §

This instrument was acknowledged before me on this the ___7___ day of __JUNE_____, 2007, by
CAROL A. NEWBERRY.

```
*****************************************
*      ☆      KEVIN W. HAAS             *
*   ╱☆╲        Notary Public            *
*  (  ☆  )    STATE OF TEXAS            *
*   ╲☆╱       My Commission             *
*      ☆      Expires 08/28/2010        *
*****************************************
```

Notary Public, State of Texas,
My Commission Expires: 8/28/10

Filed for Record in:
Karnes County

On: Oct 15,2007  at  04:36P

As a:
Recording Official Record

Document Number:      00076930

Amount:                  20.00

Receipt Number - 13938
By:
Marilyn Bednorz

STATE OF TEXAS           COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
    Karnes County
as stamped hereon by me.
Oct 15,2007

Honorable Alva Jonas, County Clerk
Karnes County

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

After filing please return to
Pamela Schoeneberg
P.O. Box 849
Hallettsville, TX 77964